STATE, PLAINTIFF-APPELLEE, v. CICKELLI, DEFENDANT-APPELLANT.

Ohio Appeals, Seventh District, Trumbull County.

No. 1524. Decided October 29, 1962.

340

*Mr. John R. Spain,* for defendant-appellant.

*Mr. Lynn B. Griffith, Jr.,* prosecuting attorney, for appellee.

(RADCLIFF, P. J., COLLIER and BROWN, JJ., of the Fourth Appellate District, sitting by designation in the Seventh District.)

COLLIER, J.   On October 13, 1961, the defendant in the Court of Common Pleas of Trumbull County, Frank Cickelli, appellant herein, was indicted by the Grand Jury of said county on five separate counts:

(1) Aiding and abetting a bribery solicitation by a public official in violation of Section 2917.01, Revised Code.

(2) In Conspiracy with another, threatening to kill Eugene Brady with intent to extort money, contrary to Section 2901.32, Revised Code.

(3) In conspiracy with another, threatening to kill Al Cicchini with intent to extort money, contrary to Section 2901.32, Revised Code.

(4) Obtaining money by false pretenses, contrary to Section 2907.21, Revised Code.

(5) Corruptly attempting to influence a witness in the discharge of his duties as a witness, contrary to Section 2917.07, Revised Code

On January 15, 1962, trial by jury was begun and at the conclusion of the State's case, on motion of the defendant, the fifth count of the indictment was dismissed.  The other four counts of the indictment were submitted to the jury and on January 21, 1962, the defendant was found guilty of counts 1 and 4 and not guilty of counts 2 and 3.  Defendant's motion for a new trial was overruled, and sentence to the Ohio Peni-

tentiary was imposed. From this judgment the defendant has perfected his appeal on question of law to this Court.

The assignments of error are:

1. Defendant was deprived of his rights under the Constitution of the State of Ohio and the Constitution of the United States of America by the Court's overruling Defendant's motion to dismiss the indictment against defendant for the reason that the panel of persons drawn to serve as Grand Jurors was not selected according to law and was improperly drawn.

2. The verdict of the jury is contrary to law and against the manifest weight of the evidence.

3. The Court erred in its charge to the jury.

4. The Court erred in permitting the introduction by the state of evidence of conversation between witnesses and third parties at which defendant was not present, when no proper foundation had been laid and there was no proof of conspiracy.

5. Error of the Court in continuing his charge to the jury, contrary to prior agreement between counsel and the Court.

6. Error of the Court in conducting secret conferences with the prosecuting attorney and his associates at two separate times during the course of the trial.

7. In indicting defendant on two counts arising out of the same subject matter or same transaction is a violation of defendant's right under the Constitution of the State of Ohio and the Constitution of the United States of America, not to be twice put in jeopardy for the same offense and the Court erred in sentencing defendant on more than one count in the indictment.

The alleged errors will be considered in the order stated in defendant's brief. Under assignment of error No. 1, the defendant contends that he was deprived of his constitutional rights for the reason the members of the Grand Jury which returned the indictment against him were not selected and drawn according to law. On October 17, 1961, the defendant was arraigned, entered a plea of not guilty, and requested leave to file motions by October 20, 1961, which was granted. On that date the defendant filed a motion for a bill of particulars and a demurrer to the indictment with no reference to this alleged error. On January 8, 1962, the defendant filed a motion to

dismiss the indictment, contending in his memorandum in support of the motion that the Grand Jury had been improperly selected and drawn. Defendant offered no evidence in support of his motion and the record is silent throughout the entire proceedings in this case on this question. In other words, the record contains no evidence showing how the persons constituting the Grand Jury were selected and drawn. The decision of a reviewing Court must be based upon the evidence before the trial Court and in the absence of affirmative proof of the alleged error, the presumption of regularity prevails. In an appeal on questions of law a reviewing court is bound by the record and may not consider any facts extraneous to the bill of exceptions regardless of how such facts may be brought to the attention of the Court. See 3 Ohio Jurisprudence (2d), 266, Section 359; *In re Estate of Gardner*, 112 Ohio App., 462; *Allison* v. *Watkins*, 78 Ohio Law Abs., 60; *Tarpoff* v. *Bd. of Liquor Control*, 83 Ohio Law Abs., 64. For this reason alone the first assignmment of error must be overruled, although, in our opinion Section 2313.41, Revised Code, applies to the situation and, had the defendant properly challenged the array or filed a plea in abatement to the indictment, the same would not have been well taken for the reason this statute provides:

"And no indictment shall be quashed or verdict set aside for any such irregularity (Jurors not selected, drawn or summoned as prescribed by law), if the jurors who formed the same possessed the requisite qualifications to act as jurors."

Defendant makes no claim that any of the jurors constituting the Grand Jury were disqualified to act as members of the Grand Jury.

In considering the second assignment of error which involves the weight and sufficiency of the evidence, we must necessarily review the evidence. We are concerned only with the evidence as it pertains to the counts one and four, count number five having been dismissed and a verdict of not guilty having been returned on counts two and three. The following is a brief statement of the background leading up to the facts on which this indictment was based. In May, 1960, the City of Warren, Ohio, passed an ordinance authorizing the advertisement for bids on a sewer improvement project, the cost of

which exceeded four million dollars. After rejecting bids received on August 1, 1960, and October 7, 1960, bids were received for the third time on March 16, 1961, and on May 5, 1961, the City Council passed an ordinance authorizing the Board of Control, consisting of the Mayor and the Safety Service Director of the City of Warren, to enter into a contract with the Rocco Ferrera Company and the Boam Construction Company, these two companies having filed a bid on phases B and C of the project. These two companies are referred to in the record as the Ferrera-Boam Companies. Rocco Ferrera was president and Al Cicchini was vice president of the Ferrera Construction Company and Pat Brady was president and Eugene Brady was Secretary and Treasurer of the Boam Company.

Although the bids of the Ferrera-Boam Companies had been accepted as the lowest and best bids, the necessary ordinance authorizing the financing of the project had not yet been passed by the City Council and the contract between the City of Warren and the Ferrera-Boam Companies could not be signed until such financing ordinance was adopted. Such ordinance was later passed by the City Council and on July 6, 1961, the contract between the City and the contracting companies was signed.

It is contended by the State that in order to procure such financing legislation by the City Council, the criminal acts alleged in the indictment in this cause were committed by the defendant. Count No. 1 of the indictment, in substance, charges that the defendant, either on April 30, 1961, or May 7, 1961, acted in conjunction as an aider and abettor of Raymond Little, a duly elected councilman of the City of Warren, to unlawfully solicit from Rocco Ferrera, Eugene Brady and Al Cicchini thirty-five thousand dollars to influence the said Raymond Little's vote as such councilman to authorize the financing of said sewerage improvement and to award the contract to the Ferrera-Boam Companies for construction of the sewer improvements, in violation of Section 2917.01, Revised Code.

The record is long and complicated and we shall not attempt to analyze the evidence in detail. The principal witnesses for the State were Rocco Ferrera, Al Cicchini and Eugene Brady, officers of the Ferrera-Boam Construction Companies,

The record shows that these officers of the Ferrera-Boam Construction Companies had several secret meetings with Raymond Little, Jack Flask and John Janosik, three councilmen of the City of Warren, for the purpose of determining how these three councilmen could receive illegal benefits for themselves to facilitate the awarding of the contract to the Ferrera-Boam Companies; that various ways and means to accomplish this purpose were discussed at these meetings, such as direct payments to the councilmen by the contractors, fictitious "extras" and commission on materials, but no definite agreement had been reached as to the amount of the illegal payments to the councilmen or the illegal method to be followed. In April, 1961, the officers of the construction company were contacted by one Louis Massacci, a resident of Warren, who suggested that these company officials meet with the defendant, Frank Cickelli, who was the County Democratic Party Chairman. On April 21, 1961, there was a meeting between Eugene Brady, Rocco Ferrera and the defendant at a restaurant in Cleveland. This meeting was followed by another meeting on May 7, 1961, in the basement of defendant's home in Warren, Ohio, with Rocco Ferrera, Al Cicchini, Eugene Brady, Raymond Little, councilman, and the defendant, Frank Cickelli present. The defendant called Mr. Little by phone after the others had arrived at his home. It is undisputed that the purpose of the meeting was to effect an agreement between the officers of the construction companies, Rocco Ferrera, Al Cicchini, Eugene Brady and Councilman Little on the amount and methods of payments by these company officers to Little necessary to have the contract awarded to their companies. The three prosecution witnesses testified that the first amount demanded by Little was $150,000.00; that the defendant participated in the conversation and finally it was agreed that the contractors would pay the sum of $35,000.00 to Little and Frank Cickelli, the defendant, the payments to be made to them in the basement of defendant's home when they both were present so that each party would know that the money was paid. The evidence further shows that the officers of the contracting companies made two payments of $5,000.00 each to one Paul Lamonge, who was designated by the defendant to receive the payments instead of Mr. Little, as first agreed upon.

The following testimony of Al Cicchini, in our opinion, if believed by the jury, was amply sufficient to establish the guilt of Raymond Little as the principal and the defendant, Frank Cickelli, as an aider and abettor in the solicitation of a bribe, as charged in the first count of the indictment:

"Q. Would you tell us what discussion, what conversation took place there?

"A. Well, Frank Cickelli asked Ray Little what would he take to make you people happy, that's how much money—that is how much money do they want, what could you settle for. Ray Little asked for one hundred and fifty thousand dollars and I believe it was Mr. Ferrera said 'No, we can't do it, it's too much, just forget the whole thing, if we are going to pay that kind of money it's impossible.' So Frank Cickelli says let's not try to slaughter these people or hang these people. I'm in business myself I know about taxes, they can't possibly pay that kind of money, let's talk this thing over some more and so we did, they came down to one hundred thousand and then to seventy-five and we argued back and forth a little bit, finally Frank says 'how much are you willing to pay.' And I believe Rocco Ferrera said twenty-five thousand dollars, and Ray Little says 'no that will never do, that will never satisfy my people.' Frank Cickelli says 'yes, you are going to have to do a little better than that,' so they finally agreed on thirty-five thousand dollars."

"Q. Was there a discussion as to how the money was to be paid, who the money was to be paid to?

"A. Yes sir, there was.

"Q. What was that?

"A. Well it seemed that Frank Cickelli and Ray Little had not been getting along very well in the past, and they both said that they didn't trust each other and that payment was to be made in Frank Cickelli's basement with both Ray Little and Frank Cickelli present to see that each party would know that the money was paid."

The fourth count of the indictment, in substance, charges that Frank Cickelli on or about August 21 or August 22nd, 1961, in conspiracy with one Paul Lamonge, did unlawfully obtain possession of five thousand dollars cash, with the consent of Al

Cicchini, Rocco Ferrera and Eugene Brady, induced by false representation; that, furthermore, on about the 27th day of August, 1961, the defendant did unlawfully obtain possession of five thousand dollars cash from Al Cicchini, Rocco Ferrera and Eugene Brady, induced by false representation. The alleged false representations set forth in the Bill of Particulars furnished by the Prosecuting Attorney upon request of the defendant and allowed by the court were: That the defendant, Frank Cickelli, represented to Rocco Ferrera, Al Cicchini, and Eugene Brady that he, the defendant, represented the Mayor of the City of Warren, Ohio, Walter Pestrack, at prior meetings between them and the defendant; that the promises given by Raymond Little and the defendant were that the Mayor and the Council of the City of Warren, Ohio, would enter into said contract and see that it was awarded after the money was paid; that the payment on August 22, 1961, was made by Rocco Ferrera and the payment on August 27th, 1961, was made by Al Cicchini.

The following excerpts of the testimony of the witness, Brady, relating to count No. 4 are:

"Q. This thirty-five thousand dollars that was to be paid to Frank Cickelli and Ray Little, so what was that to be paid for?

"A. It was paid to get the councilmen to pass the financing of the project.

"Q. At the time of this meeting the financing legislation had not been passed, is that correct?

"A. That's right.

"Q. Was there any further acts required by the Mayor?

"A. Why he had to sign the contract.

"Q. Who was to receive the money for the illegal extras, if it was indicated, if it was said in that meeting?

"A. Well pay Ray Little and Frank Cickelli."

The witness, Rocco Ferrera, testified as follows:

"Q. Did Mr. Cickelli ever state he represented any person or persons in this transaction?

"BY MR. SPAIN: Objection.

"COURT: He may answer.

"A. Mr. Cickelli stated that he represented the Mayor."

The testimony of Walter Pastrack, Mayor of the City of Warren at the time of the transaction, testified as follows:

"Q. Did you at any time authorize Frank Cickelli to represent you in dealing with the Boam-Ferrera Company?

"A. No sir."

It is also in the evidence that the sum of $10,000.00 was paid by Rocco Ferrera and Al Cicchini to Paul Lamonge, the person designated by the defendant to receive the money. Thus the record contains evidence tending to prove all the essential elements of the offenses charged in the fourth count of the indictment. It was the province of the jury to determine the credibility of the witnesses and the guilt or innocence of the defendant. A reviewing court may not substitute its judgment for that of the jury and when a verdict is supported by substantial credible proof, such verdict will not be disturbed.

For the third assignment of error the defendant claims the court erred in its charge to the jury in that the instructions as given on aiding and abetting and the element of intent are not adequate or complete and that the court failed to give any instruction on motive or lack of motive. These alleged errors, if any, are errors of omission and not commission. The court's instructions must be considered as a whole and not by words, phrases and clauses taken out of context. We have carefully examined the charge of the court and find no error of any consequence, especially in the absence of any request for further instructions on any phase of the case, when counsel both for the State and the defendant were given an opportunity by the court to make such requests. See *State* v. *Tudor*, 154 Ohio St., 249. Motive is not an essential element of either offense of which the defendant was found guilty. The third assignment is overruled.

Under the fourth assignment of error defendant claims the court erred in the introduction of evidence by the State of conversations between witnesses for the State and one Paul Lamonge when there had been no proof of a conspiracy between the defendant and the said Paul Lamonge. Without attempting to discuss the evidence at length, suffice it to say the record contains ample proof that Lamonge played an active role, in conjunction with the defendant, in the furtherance of the com-

mon purpose and design to receive illegal benefits on the sewer improvement project. In fact, the record shows that Lamonge was designated by the defendant to receive the illegal payments, did receive the sum of ten thousand dollars from the contractors, that his conduct was so crude, bold and despicable in his demands upon the contractors that Eugene Brady and Al Cicchini, superintendents of construction, ceased operations, shut the job down and fled for their lives.

The rule that before evidence of acts or declaration of co-conspirators are admissible against an accused, at least a prima facie case of conspiracy must be established, is not without qualifications. 10 Ohio Jurisprudence (2d), 78, Section 25, reads: "If the evidence of declarations is first admitted, and it is afterwards made to appear from the whole case that a conspiracy existed, the mistake in admitting the evidence before proof of conspiracy is immaterial and not prejudicial." This assignment is overruled.

For his fifth assignment of error the defendant claims the court erred in continuing his charge to the jury, contrary to an agreement between court and counsel. The record shows that the court delivered the most of his charge to the jury late in the evening but adjourned court without completing the instructions; that the next morning the court continued with the instructions and submitted the case to the jury. Here again, the record in this case does not show there was an agreement between the court and counsel in regard to this matter. When this complaint was called to the court's attention, the Judge said, "There was no agreement, I merely explained to the attorneys that I did not want to send the jury out so late in the afternoon." This assignment is without merit and is overruled.

For his sixth assignment of error the defendant complains that after two conferences between counsel and the court, the court excused counsel for the defense from his chambers and continued the conference with counsel for the State; that defense counsel were never advised about what transpired in their absence. This assignment of error clearly points out how sensitive and suspicious litigants and lawyers become in a heated trial of a lawsuit. All parties concerned should avoid even the

appearance of evil during a trial, but in the absence of any affirmative showing that the defendant was prejudiced in any way by what transpired, we must assume proper motives on the part of the court. The matter complained of occurred in the absence of the jury and, so far as the record shows, was never brought to the jury's attention. This assignment is overruled.

Under the seventh assignment of error the defendant claims his constitutional rights were violated when he was indicted on two counts arising out of the same transaction; that defendant may not be put twice in jeopardy for the same offense; that the court erred in sentencing the defendant on more than one count in the indictment.

The defendant relies upon the rule announced in the case of *State* v. *Green*, 89 Ohio App., 241, which holds:

"An indictment may contain two or more counts charging accused with commission of two or more offenses, but upon trial the accused cannot be found guilty and sentenced on more than one of the counts if it appears that the offenses charged in such an indictment were predicated upon the same transaction and are related to the same subject matter."

As we view the record this rule does not apply to the instant case for the reason the record shows two different transactions. In the first count of the indictment the defendant was charged and found guilty of aiding and abetting Raymond Little, a city councilman, to solicit a bribe from the contractors in violation of Section 2917.01, Revised Code. The evidence adduced by the State to prove the essential elements of this alleged offense centered mostly on what occurred at the meeting on May 7, 1961, in defendant's home tending to prove that Raymond Little, an elected city councilman, did, in fact, solicit a bribe and that the defendant aided and abetted Little in so doing.

The evidence relied upon by the State to establish the guilt of the defendant under the fourth count in the indictment relates to an entirely different and later transaction and involves different persons. On August 21st and August 27th, 1961, the dates of these alleged offenses in the fourth count of the indictment, Raymond Little had been cast aside and Paul Lamonge had been designated by the defendant to receive the money from the contractors upon false representation that the

defendant represented the Mayor of the City of Warren, in violation of Section 2907.21, Revised Code. This statute defines an entirely separate and distinct crime from that charged in the first count. Conviction under this statute rests entirely upon different evidence. An acquittal of either the first or fourth count of the indictment would not be a bar in a prosecution of the other. This is the common test to determine whether the rule of twice in jeopardy has been violated. 15 Ohio Jurisprudence (2d), 469, Sec. 294, *State* v. *Johnson*, 112 Ohio App., 124; *State* v. *Martin*, 154 Ohio St., 539. The seventh assignment of error is overruled.

We have carefully examined this entire record and have fully considered all of the assignments of error and find no error of sufficient consequence to require a reversal of the judgment. The case, in our opinion, was very well tried by both the court and the attorneys representing the State and the defendant. The judgment must be and hereby is affirmed.

Judgment affirmed.

RADCLIFF, P. J., and BROWN, J., concur.