THE STATE OF OHIO, APPELLEE, v. JOHNSON, APPELLANT.

(No. S-77-17—Decided May 26, 1978.)

*Mr. Jacob A. H. Kronenberg,* for appellant.
*Mr. Stephen E. Hagerman,* for appellee.

POTTER, P. J.  After a jury trial, defendant, the appellant herein, was convicted of receiving, retaining or disposing of stolen property, the value of which was one hundred fifty dollars or more, a violation of R. C. 2913.51. She appeals from that conviction and sentence and files the following assignments of error:

"I. The lower court erred in admitting into evidence Ex-

hibits 2-4 obtained from a residence at 309 Kentucky Avenue, Fremont, Ohio for the reason that said residence was searched and said exhibits seized pursuant to an invalid search warrant in violation of Article 1, Section 14 of the Ohio Constitution and the Fourth and Fourteenth Amendments to the United States Constitution.

"II. The lower court erred in not permitting counsel for the defense to examine statements of the witness Mike Hill made prior to the trial of this case when counsel moved for permission to examine said statements.

"III. The lower court erred in not directing a verdict in favor of defendant at the close of the State's case.

"IV. The lower court erred in not directing a verdict for defendant as the jury verdict was against the weight of the evidence."

Randy Wilkerson was taken into custody by Fremont police officers on September 17, 1976, on the basis of information received by the officers that Wilkerson was in possession of a stolen CB radio. While in custody, Wilkerson told the officers that defendant Bernice Johnson bought and sold stolen electronic equipment. Wilkerson was released by police and told to go to defendant's house to see if stolen equipment was present there. Upon Wilkerson's return to the police station a search warrant was obtained covering defendant's home at 603 Second Street in Fremont. Police officers and the prosecutor photostated approximately $200 in various denominations, gave the bills to Wilkerson and, after searching his car, instructed him to return to defendant's home and purchase some stolen equipment. Police officer Huss testified that he set up surveillance near defendant's home at the time Wilkerson was to make the buy and saw Wilkerson park his car and move in the direction of defendant's house. Officer Huss also testified that he then saw a small boy come out of defendant's home and walk across the street toward the home at 309 Kentucky Avenue. The boy was seen a few minutes later coming back across the street toward 603 Second Street carrying a cardboard box. Wilkerson was seen leaving the defendant's home shortly thereafter with a cardboard box. Wilkerson met police officers at a prearranged place and informed them that he purchased a microphone and CB radio from defendant and that defendant had sent her son over to the Kentucky Avenue home to get that equipment.

After verifying that the equipment Wilkerson said he purchased from defendant had been stolen, police officers went to defendant's home, showed her the warrant and proceeded to search the premises. The search produced a microphone, later identified as one stolen from a gas station, and $110 taken from defendant's bed, the serial numbers of which matched the photostats of bills given to Randy Wilkerson. After the search of defendant's Second Street residence, police officers obtained another search warrant covering 309 Kentucky Avenue. At trial defendant testified that the Kentucky Avenue home was owned by her and her husband, but rented out to Mark Allen. Several items seized at that home were identified at trial by their owners who testified as to their value and stated that the property had been stolen from them.

After the close of the state's case, the court directed a verdict of acquittal for Willie Johnson, defendant's husband. The case proceeded as related to the charges against defendant, and the jury returned a verdict finding her guilty of receiving, retaining or disposing of stolen property the value of which was $150 or more. From that verdict and sentence, defendant now appeals.

The first assignment of error relates to the trial court's failure to suppress the evidence seized at 309 Kentucky Avenue. The issue of standing was not raised or briefed by either party. Defendant failed to make the transcript of the suppression hearing part of the record in this appeal and has not furnished a copy of the affidavit and search warrant. We are, therefore, confined to the language of the affidavit as quoted in the briefs of both appellant and appellee. The language is as follows:

"That an informant, who has provided information to the undersigned affiant in the past, which information has proven to be reliable, has informed affiant that one Bernice Johnson told him (informant) within the past 24 hours, that she had some CB's in the house she owned across the street where one Mark Allen lives***; and that said informant had purchased a CB from her, which she secured from the second floor of said Mark Allen house (she sent her son over to said house to get said CB) and said CB has been identified as stolen property."

We hold that the affidavit shows the factual basis for the

informant's information and presents the underlying circumstances from which the affiant concluded that the informant was credible and the information reliable. The affidavit in question thus satisfies the requirements of Crim. R. 41(C), and those enunciated in *Aguilar* v. *Texas* (1964), 378 U.S. 108, and *State* v. *Karr* (1975), 44 Ohio St. 2d 163. The first assignment of error is, therefore, not well taken.

In her second assignment of error appellant argues that the trial court failed to comply with Crim. R. 16(B)(1)(g) because the judge's "in camera inspection" of a state witness' prior "statement" was conducted while appellant's counsel was cross-examining the witness, thereby denying counsel an opportunity to participate pursuant to Crim. R. 16(B)(1)(g). The state called Michael Hill as a witness and he testified that he presented various items of stolen property to defendant, informed her that they were stolen and asked defendant if she would either buy the items or sell them for him. During the cross-examination of Hill, appellant's counsel discovered that Hill had made a "statement" to police officers about the case. Hill testified that he did not sign the statement nor did he see the statement until it was shown to him the day before he testified. Hill further stated that he was not sure that the police officers wrote anything down when he made the "statement." After making the motion for an in-camera inspection of the "statement," appellant's counsel continued with the cross-examination. The trial judge read the statement while the cross-examination was in progress and overruled defense counsel's objection that counsel did not participate in the "in-camera inspection." The court held that the "statement" of Michael Hill was not a statement but rather was a report and, therefore, refused to allow defense counsel to use the "statement" for further cross-examination of the witness.

Crim. R. 16(B)(1)(g) provides:

" In camera inspection of witness' statement. Upon completion of a witness' direct examination at trial, the court on motion of the defendant shall conduct an in camera inspection of the witness' written or recorded statement with the defense attorney and prosecuting attorney present and participating, to determine the existence of inconsistencies, if any, between the testimony of such witness and the prior statement.

"If the court determines that inconsistencies exist, the

statement shall be given to the defense attorney for use in cross-examination of the witness as to the inconsistencies.

"If the court determines that inconsistencies do not exist the statement shall not be given to the defense attorney and he shall not be permitted to cross-examine or comment thereon.

"Whenever the defense attorney is not given the entire statement, it shall be preserved in the records of the court to be made available to the appellate court in the event of an appeal."

The rule does not define the word "statement"; we therefore look to the purpose of that provision, the rules of construction expressed in Crim. R. (1)(B), and to cases from this and other jurisdictions involving similar rules for guidance in our interpretation of the term. The federal statute relating to demands for the production of witnesses' statements, Section 3500, Title 18, U.S. Code, commonly known as the Jencks Act, defines statement as:

"(1) a written statement made by said witness and signed or otherwise adopted or approved by him;

"(2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or

"(3) a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury."

We find the following explanation of the Jencks Act from the annotation in 5 L. Ed. 2d 1014, 1025, 1026-1027, Sections 12[a] and [c] to be helpful in the instant case:

"[a] ***The evident purpose of the statute is to limit the right of inspection for use in cross-examination to reasonably accurate or authenticated statements and reports, for which the government witness, not the government agent (making the report), is responsible.***

"[c] Only a 'substantially verbatim,' not a precisely verbatim, recital of a government witness' pretrial oral statement is required.***What is meant is that the statement should give the substance of what a government witness said and, so far as the substance is concerned, substantially in the words of the witness. To be 'substantially verbatim,' a document must

contain a fairly comprehensive reproduction of the witness' words, and continuous, narrative statements made by the witness, and not merely fragmentary notes, jottings, scraps, or writings, or the agent's own interpretations or impressions."

Clearly, a written statement signed or otherwise adopted or approved by the witness would serve the purpose of Crim. R. 16(B)(1)(g) and fall within the plain meaning of the word "statement" as would a recording of the witnesses' words or a transcription thereof. The document in the case *sub judice*,[1] which was made part of the record on appeal, does not fall into

---

[1] The text of the report, with the name of one juvenile who did not testify deleted, is as follows:

"On September 11, 1976 we received a complaint from James Rader, 1029 Franklin Street, in regards to a breakin of his home. A CB base unit, C-B's, microphones, money & keys for autos & house were stolen.

"Through this investigation two subjects were charged with the burglary. They were Michael Hill, 1024 Woodrow Street, age 15, and***.

"Mike Hill advised that on Saturday September 11th. after he and***had stolen the things from Rader home, that he took American Freedom Base unit, gold microphone, another power microphone, and hand mike with cord to the home of Bernice Johnson, 603 Second Street for her to sell for him. He stated that he took these things to her home near 2:00 PM on that day. He carried these things in a paper sack and crossed from West-East side by use of tressel on North Front Street.

"Mike stated that he went to Bernice's home last Wednesday September 15th. to see if she had sold the above items for him, and she told him to come back on Friday the 17th.

"Mike stated that he and***stole a Channel Master tape player out of an auto about a month ago. They took it to Bernice Johnson to sell for them and they received $35.00 from her for the tape player. Channel Master tape player was taken from her home on the search 9/17.

"Mike advised that he has taken 7-8 CB units to Johnson home for her to sell for him, and that***has taken at least 4-5 CB's there for her to sell for him. He stated they've told Bernice the property she has been receiving was stolen from autos. They were asked at times how much they wanted for the things being taken there, and from what part of the city they were stolen from.

"Mike advised that he got to know Bernice through Randy Wilkinson, and had been with Randy at least two times at her home. One of those times Randy took something to her home to sell for him.

"On September 17th. and prior to the search when Randy Wilkinson was at Johnson home, I'm quite positive I saw Mitchell Johnson walk from his home over to 309 Kentucky Ave. to another home of Bernice which we searched & recovered stolen property. He appeared to be carrying a cardboard box over to the home and back to his.

"***stated that he was with Hill one time at Johnson home when Hill took a CB unit to her home to sell for him."

either of the previously mentioned categories. It purports to be a police report addressed to the Chief of Detectives and was not signed or otherwise approved by the witness. While all courts do not agree, we see no reason why the mere fact that the document was a report from one police officer to another would automatically bar its productibility under Crim. R. 16(B)(1)(g). *Cf. State* v. *Smith* (1976), 50 Ohio App. 2d 183. We hold that under certain conditions a police report may be producible under Crim. R. 16(B)(1)(g) and adopt the test for producibility advanced in *State* v. *Houston* (Iowa 1973), 209 N.W. 2d 42, 46:

"The true test is whether the statement is the witness' own, rather than the product of the investigator's selections, interpretations and interpolations. It must be shown, unless there is direct evidence the witness prepared, signed or adopted the statement, that it minimally is a continuous, narrative statement made by the witness and recorded verbatim, or nearly so."

*Cf. People* v. *Miles* (Ill. App. 1971), 273 N.E. 2d 647, with *People* v. *Watson* (1966), 36 Ill. 2d 228, 221 N.E. 2d 645. See also A.B.A. Standards and Commentary Discovery and Procedure Before Trial, Section 2.1 (approved draft 1970). As other courts have noted, when it is doubtful whether any producible statement exists, a hearing on the issue of "producibility" held in camera with both attorneys present is strongly recommended. See *Palermo* v. *United States* (1959), 360 U.S. 343; *Fortenberry* v. *State* (1975), 55 Ala. App. 1, 312 So. 2d 573.

After a review of the contested "statement" we conclude that the relevant part of the report did not contain impressions or observations of the officer, nor could the report be classified as "work product." Cf. *Adams* v. *State* (1970), 254 Ind. 509, 260 N.E. 2d 878; *Rapue* v. *People* (Colo. 1973), 466 P. 2d 925. Rather, the report contained a substantially verbatim recital of the witness' statement written in the narrative form. We hold, therefore, that the report contained a "statement" of Michael Hill which was included within the scope of Crim. R. 16(B)(1)(g). We also find, however, that there were no real inconsistencies between Michael Hill's pretrial statement and his testimony at trial. Therefore, the error, if any, in the trial court's procedure for the in-camera inspection was not pre-

judicial. For that reason we find the second assignment of error not well taken.[2]

Appellant's third and fourth assignments of error both concern the weight of the evidence, and we find both assignments of error not well taken. At the close of the state's case, the evidence was sufficient to sustain a conviction of the offense charged; to have granted defendant's motion for a judgment of acquittal at that point would have been improper. See Crim. R. 29(A). We also find that there was sufficient credible evidence for the trier of fact to support a finding of guilt beyond a reasonable doubt. *State* v. *Cickelli* (1962), 118 Ohio App. 87, appeal dismissed 175 Ohio St. 146, *certiorari* denied 377 U.S. 128; *Sandoffsky* v. *State* (1928), 29 Ohio App. 419; 3 Ohio Jurisprudence 2d 820, Appellate Review, Section 821.

The court finds that the defendant was not prejudiced or prevented from having a fair trial, and the judgment of the Sandusky County Court of Common Pleas is affirmed.

*Judgment affirmed.*

CONNORS and WILEY, JJ., concur.

WILEY, J., retired, was assigned to active duty under authority of Section 6(c), Article IV, Constitution.

---

[2] We note with approval the following passage from *State* v. *Houston* (Iowa 1973), 209 N.W. 2d 42, 47:

"While so holding [that there was no error in denying the defense access to a police report] we encourage prosecutors to consider seriously whether any actual harm will come from permitting defense counsel to inspect documents in their files. If this can be done in fairness to the state as well as defendant, potential appeal grounds will be avoided."