[Cite as *State v. Inman*, 2013-Ohio-3351.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HOCKING COUNTY

STATE OF OHIO,                              :

    Plaintiff-Appellee,                 :
                                       Case No. 12CA16

    vs.                                 :

                                       <u>DECISION AND</u>
WILLIAM A. INMAN, II,                       :       <u>JUDGMENT ENTRY</u>

    Defendant-Appellant.                :       RELEASED 07/23/2013

---

APPEARANCES:

David J. Winkelmann, Athens, Ohio, for Appellant.

Michael DeWine, Attorney General of Ohio, and Paul Scarsella, Special Hocking County
Prosecutor, Columbus, Ohio, for Appellee.

---

Hoover, J.

{¶ 1} A jury found the appellant, William Inman, II, guilty of two counts of Aggravated

Murder; Kidnapping; Tampering with Evidence; and the Gross Abuse of a Corpse in relation to

the disappearance and murder of his wife, Summer Inman. The Hocking County Common Pleas

Court denied appellant's subsequent motion for a new trial. In this case, appellant contends that

the trial court erred when it denied his motion for a mistrial based on the State's purported failure

to disclose a witness statement prior to the start of trial. Next, appellant contends that the trial

court erred in its denial of his motion for a new trial. Specifically, appellant argues that the

State's failure to disclose a prior felony conviction of one of its witnesses hindered his ability to

impeach the credibility of the witness and violated his rights to a fair trial. Finally, appellant

contends that the cumulative effect of the alleged errors merit reversal of his conviction in the

instant case.  For the following reasons, appellant's three assignments of error are overruled.
The judgment of the trial court is affirmed.

I

STATEMENT OF THE CASE

{¶ 2} Appellant was indicted by a Hocking County Grand Jury with the following counts in relation to the murder of his wife: two counts of Aggravated Murder in violation of R.C. 2903.01(A) and (B) with specifications under R.C. 2941.14; Murder in violation of R.C. 2903.02(A); Kidnapping in violation of R.C. 2905.01(A)(3); Tampering with Evidence in violation of R.C. 2921.12(A)(1); and Gross Abuse of a Corpse in violation of R.C. 2927.01. After a lengthy jury trial in May and June of 2012, appellant was convicted of the two Aggravated Murder counts; the Kidnapping charge; the Tampering with Evidence charge; and the Gross Abuse of a Corpse charge.  The Murder charge was subsequently dismissed by judgment entry of the trial court.  Appellant was sentenced to life in prison with no possibility of parole on the Aggravated Murder convictions; the life sentence was ordered to run consecutively with the sentences for the convictions of Kidnapping, Tampering with Evidence, and Gross Abuse of a Corpse.

{¶ 3}  Following the guilty verdicts, appellant filed a timely motion for a new trial pursuant to Crim.R. 33(A)(1) and (2), together with an affidavit of counsel alleging that the State had failed to disclose the prior felony conviction of John Anthony Matheny whose testimony placed appellant in Logan, Ohio, on the night of the victim's disappearance.  The trial court denied the motion. This appeal followed.

{¶ 4}  Appellant raises three assignments of error for review.

First Assignment of Error:

> The Trial Court Erred in Failing to Grant a Mistrial Due to the Surprise
> Testimony of John Anthony Methany Identifying William Inman II as a Person he
> Saw in Logan, Ohio on March 22, 201[1].

Second Assignment of Error:

> The Trial Court Erred When it Declined to Grant William Inman II a New Trial
> Based on the Prosecutor's Misconduct in Failing to Disclose the Prior Felony
> Conviction of the State's Sole Identification Witness.

Third Assignment of Error:

> The Trial Court's Failure to Grant the Defense Motion for Mistrial or to Grant a
> New Trial Based on the Prosecution's Failure to Inform Counsel of Matheny's
> Identification Testimony and Prior Conviction Constitutes Cumulative Error.

II

FACTS

{¶ 5}   A review of the record reveals the following facts that are pertinent to this appeal.[1]  On the evening of March 22, 2011, Summer Inman was kidnapped from her place of employment in Logan, Ohio.  After a weeklong search, Summer was found dead, stuffed in the septic system behind the Faith Tabernacle Church in Athens County, Ohio.  Industrial zip ties had been fastened around her wrists and neck.  The official cause of death was ligature strangulation.

{¶ 6}   On March 23, 2011, numerous law enforcement officers questioned the appellant. Appellant indicated to law enforcement that he and his parents had been house hunting in Cleveland, Ohio, on March 22, 2011.  He acknowledged that they had been driving a white

---

[1] The following statement of facts highlights the evidence that is material to the instant appeal.  It does not document all the evidence that was offered at trial.

Crown Victoria, which his father had purchased on either March 18 or 19, 2011.[2]  Appellant also indicated that the vehicle had broken down along an interstate in the Cleveland area, and that he and his parents had spent the night in the vehicle.

{¶ 7}   At appellant's trial, several individuals testified to having witnessed either the kidnapping, or the vehicle, which was allegedly used in the kidnapping and murder.

{¶ 8}   Kylee Helman who had been jogging in Logan, Ohio, on the night of March 22, 2011, testified that she heard screams coming from the alley near the bank where the victim had been working.  She immediately ran to the area and saw two men use a taser on an unidentified female and then she saw the men place the female into a vehicle.  She testified that the vehicle looked like an old, white police cruiser; and that the vehicle had no visible license plates.

{¶ 9}   Emily Hedges who had accompanied Helman on the evening jog, also testified at trial.  Hedges testified that she witnessed two men surrounding a female in the alley near the bank.  Hedges said that the men appeared to be wearing ski masks.  She could hear a taser, and she also heard the voice of a woman coming from the driver's side of the vehicle.  Hedges described the vehicle as a white, undercover police cruiser.  Hedges said the vehicle had tinted windows, a spotlight, and no visible license plates.

{¶ 10}  Linda Harris testified that she was driving in the downtown Logan area on the night of the incident when she heard screams and yelling.  As she was driving, she saw a vehicle and two people arguing near the bank parking lot.  She described the car as white, similar in appearance to an old police vehicle--possibly a Crown Victoria.

---

[2] Evidence presented at trial, including the vehicle's title, indicate that the vehicle had previously been a police cruiser.

{¶ 11} Richard Leake had been walking in the area of the bank on the night of March 22, 2011. He testified that he heard a woman screaming from the bank alley. Leake walked in the direction of the screams and saw a white vehicle with a spotlight that looked like a police car. He also witnessed two men restraining a woman, and also saw the men use a taser on the woman. As he got closer to the disturbance, he witnessed a middle-aged female driver with blonde hair inside the vehicle. Leake was pepper-sprayed by one or both of the men, causing him to flee the scene. Leake believed the men were wearing ski masks.

{¶ 12} Two other witnesses for the appellee testified that they saw a white vehicle, described as an old police cruiser, parked at the Faith Tabernacle Church in the late evening and early morning hours of March 22 and March 23, 2011. One of the witnesses, Chrystal Farris, testified that she saw two men standing to the rear of the vehicle which had both back passenger doors open. Farris also saw a petite, light-haired woman in the front driver's seat of the parked vehicle.

{¶ 13} During the course of the investigation, law enforcement was able to obtain cell phone records and a GPS unit belonging or connected to the appellant. Robert Moledor of the Columbus Police Department and a member of the FBI Violent Crimes Task Force analyzed the cell phone records. Moledor testified that appellant's cell phone connected to cell phone antennas located in Logan, Ohio, on the night of March 22, 2011. Moledor was able to track the phone's activity from March 22 through March 23, 2011 and determined that the phone traveled from Mansfield, Ohio, to Logan, Ohio, and then back to northeast Ohio during that time period.

{¶ 14} FBI Special Agent Michael Daugherty testified that he analyzed data taken from the seized GPS unit. Daugherty was able to map a path that the GPS unit had traveled on March

22 and March 23, 2011.  Specifically, Daugherty testified that the GPS unit moved from Mansfield, Ohio, on March 22, 2011, at approximately 2:20 p.m. and arrived in Logan, Ohio, at 5:43 p.m.  At 8:06 p.m. the GPS unit was turned off or lost power at the Wal-Mart store in Logan.  The GPS unit regained power at 11:45 p.m. in Nelsonville, Ohio.[3]  In the early morning hours of March 23, 2011, the GPS unit made a return trip to northeast Ohio, making several stops along the way.

{¶ 15}  John Anthony Methany also testified at trial on the state's behalf.  Methany's parents are the next-door neighbors of the victim's parents.[4]  On March 24, 2011, Matheny gave a voluntary, signed statement to the police.  The statement, which was provided to appellant during pretrial discovery, indicated that on March 22, 2011, approximately four hours prior to the kidnapping, Matheny had seen a white Crown Victoria, appearing to be an old police cruiser, in Logan, Ohio.  Matheny's statement also indicated that a blonde-haired woman was driving the vehicle, and two male passengers were also inside.  The statement did not specifically identify the appellant as one of the passengers.

{¶ 16}  In the weeks leading up to the trial, the appellee met with Matheny for witness preparation.  At that time, Matheny indicated that he could identify the appellant as one of the male passengers of the white Crown Victoria.  At trial, Matheny testified that in the fall of 2010 he had witnessed the victim and appellant engage in a heated discussion at the victim's parent's house.  He further testified that one of the men he saw in the vehicle on March 22, 2011, was the appellant.

---

[3] The Faith Tabernacle Church is located off of U.S. Route 33 near Nelsonville.
[4] At the time of her kidnapping and murder, the victim and appellant had been separated for several months; and the victim had been living at her parent's home in Logan, Ohio.

{¶ 17} Following the direct examination of Methany, defense counsel moved for a mistrial. The defense argued that the State had committed a Crim.R. 16 violation by failing to disclose that Methany could identify the defendant.

{¶ 18} In response, the State argued that it had complied with Crim.R. 16 by disclosing Methany's police statement. The State acknowledged that they learned that Methany could identify the appellant during the course of trial preparation; and thus, they were not required to disclose the identification to the defense.

{¶ 19} The trial court denied the motion for the mistrial, but granted appellant a short continuance to prepare for cross-examination. On cross-examination, defense counsel confronted Matheny with the police statement in which he did not identify appellant. Methany testified that when he saw appellant's photograph in media reports he was able to identify appellant as the man he saw in the fall of 2010 and on March 22, 2011. Methany confirmed that he first informed prosecution that he could identify appellant as the man in the vehicle during trial preparation in April of 2012.

{¶ 20} At the conclusion of Matheny's testimony, the appellant renewed his motion for a mistrial, and argued in the alternative that the testimony should be stricken. The trial court again denied the motion for mistrial, and also denied the motion to strike Matheny's testimony.

{¶ 21} Following trial, appellant filed a motion for new trial after he discovered that the State had failed to disclose Matheny's prior conviction of Gross Sexual Imposition. Appellant argued that the felony conviction fell within the ten-year admissibility window under Evid.R. 609(B); and thus, had he been informed, he could have used the conviction to impeach

Methany's credibility. The State filed a memorandum in opposition; and in July of 2012, the trial court held a hearing on the motion. The trial court ultimately denied the motion.

III

LAW & ANALYSIS

A.    *Motion for Mistrial*

{¶ 22}  In his first assignment of error, appellant contends that the trial court erred when it denied his motion for mistrial based on the State's alleged failure to timely provide discovery under Crim.R. 16 and *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). We review a trial court's ruling on a motion for mistrial for an abuse of discretion. *State v. Kulchar*, 4th Dist. No. 10CA6, 2011-Ohio-5144, ¶ 38. "The term 'abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980). For the following reasons, the trial court did not abuse its discretion when it denied appellant's motion.

{¶ 23}  Appellant argues that he was completely taken by surprise when Matheny took the stand at trial and identified appellant. Appellant further contends that the identification was prejudicial because the defense was prepared to offer an alibi;[5] but in light of Matheny's testimony, he was forced to abandon the alibi defense. In short, appellant contends that the State was obligated to disclose to the defense, prior to trial, the identification Methany had made during trial preparation.

---

[5] Appellant had filed a notice of alibi on May 21, 2012, which indicated that at the time of the offense appellant was not present at the scene.

{¶ 24} Crim.R. 16 governs discovery in a criminal case. Appellant claims he had a right to be put on notice of Matheny's identification pursuant to Crim.R. 16(B)(5) or (7). Crim.R. 16(B)(5) requires the state to disclose, upon written demand of discovery by the defendant, any evidence "favorable to the defendant and material to guilt or punishment * * *." Crim.R. 16(B)(7) requires the disclosure of "[a]ny written or recorded statements by a witness in the state's case-in-chief, or that it reasonably anticipates calling as a witness in rebuttal."

{¶ 25} Under the plain language of Crim.R. 16(B)(5), appellant was not entitled to disclosure of Matheny's pretrial identification. Matheny's identification placed the appellant in Logan on the night of the victim's disappearance; and directly contradicted appellant's statements to law enforcement that he had been in Cleveland on the night of the incident. Therefore, the identification was not *favorable* to the appellant. Moreover, the identification was not *material* to the jury's determination of guilt. *See* materiality analysis infra.

{¶ 26} Appellant's Crim.R. 16(B)(7) argument also lacks merit because Matheny's identification of appellant during trial preparation was not a written or recorded witness statement requiring disclosure. A writing or recording is only a statement for purposes of Crim.R. 16 if the witness prepared, signed, or adopted the statement; or if it is a substantially verbatim recital of the witness' statement written in a continuous, narrative form. *State v. Cunningham*, 105 Ohio St.3d 197, 2004-Ohio-7007, 824 N.E.2d 504, ¶ 44; *State v. Phillips*, 4th Dist. Nos. 89-CA-32, 89 CA-33, 1992 WL 42790, *5 (Mar. 5, 1992); *State v. Johnson*, 62 Ohio App.2d 31, 403 N.E.2d 1003, paragraph one of the syllabus (6th Dist.1978); *State v. Moore*, 74 Ohio App.3d 334, 340, 598 N.E.2d 1224 (10th Dist.1991). Similarly, notes taken by a prosecutor, which are not reviewed, adopted or signed by the witness, do not constitute discoverable statements within the meaning of Crim.R. 16. *State v. Henry*, 37 Ohio App.3d 3,

523 N.E.2d 877, paragraph three of the syllabus (6th Dist.1987). In fact, the *Henry* court concluded that prosecutor notes of witness interviews are work product, not witness statements. *Id*. at 8. The General Assembly has expressly declared work product non-discoverable under Crim.R. 16. *See* Crim.R. 16(J)(1) ("The following items are not subject to disclosure under this rule: (1) Materials subject to the work product protection. Work product includes, but is not limited to, reports, memoranda, or other internal documents made by the prosecuting attorney or defense counsel, or their agents in connection with the investigation or prosecution or defense of the case; * * *."). Moreover, the General Assembly has made clear that a document prepared by a person other than the witness is not a witness statement unless "explicitly adopted by the witness." Crim.R. 16(B)(6).

{¶ 27} In the case sub judice, discussion during Matheny's trial preparation was not reduced to written form prepared, adopted, or signed by Matheny. At best, the discussion may have been documented in the prosecuting attorneys' notes, but that is not a written statement as defined in the case law, supra. Rather, an attorneys' notes made during witness preparation are work product expressly protected from disclosure. Even more, the trial record indicates that the State complied with its obligation under Crim.R. 16(I) by disclosing Matheny as a potential witness, and providing appellant with his name and address.[6] It is also undisputed that the State provided appellant with Matheny's March 24, 2011 police statement.

{¶ 28} Even if we were to assume, arguendo, that the State's failure to disclose the identification is in fact a Crim.R. 16 violation; we would still conclude that the trial court did not abuse its discretion in denying appellant's motion for mistrial. Prosecutorial violations of

---

[6] Crim.R. 16(I) requires each party to provide "to opposing counsel a written witness list, including names and addresses of any witness it intends to call in its case-in-chief, or reasonably anticipates calling in rebuttal or surrebuttal."

Crim.R. 16 result in reversible error only when there is a showing that (1) the violation was willful, (2) disclosure of the information prior to trial would have aided the accused's defense, and (3) the accused suffered prejudice. *State v. Jackson*, 107 Ohio St.3d 53, 2005-Ohio-5981, 836 N.E.2d 1173, ¶ 131; *State v. Scott*, 4th Dist. No. 05CA809, 2006-Ohio-3527, ¶ 16.

{¶ 29} Here, the trial court determined that the nondisclosure was not a willful violation of the rules. We find no reason to overturn that determination. Further, disclosure of the identification prior to trial would not have aided the appellant's defense. The State provided appellant with Matheny's name and contact information well in advance of trial. The defense could have contacted Matheny and conducted its own pretrial interview. Plus, the trial court granted appellant a continuance prior to cross-examination of Matheny. Appellant had adequate time to fully digest the testimony, and in an effort to challenge the reliability of the testimony, appellant confronted Matheny with the March 24, 2011 police statement in which he did not specifically identify appellant as one of the passengers. In short, appellant has failed to indicate how prior knowledge of the identification would have aided his defense.

{¶ 30} We must also determine whether appellant was entitled to pretrial disclosure under *Brady v. Maryland*, supra. The *Brady* decision held that, suppression by the prosecution of evidence that is favorable to the accused and material either to guilt or to punishment is a violation of due process. *Brady*, 373 U.S. at 87, 83 S.Ct. 1194. "Evidence suppressed by the prosecution is 'material' within the meaning of *Brady* only if there exists a 'reasonable probability' that the result of the trial would have been different had the evidence been disclosed to the defense." *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166, ¶ 27, citing *Kyles v. Whitley*, 514 U.S. 419, 433-434, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). "The question is not whether the defendant would more likely than not have received a different

verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Id*., quoting *Kyles* at 434.

{¶ 31} At trial, the State offered an abundance of evidence in addition to the testimony of Matheny that would lead a reasonable juror to conclude that appellant was in fact in Logan on the night of the victim's disappearance. For instance, the technological evidence places appellant in Logan on March 22, 2011. Appellant also admitted to law enforcement that he and his parents were in a vehicle on the night of the incident that matched eyewitness accounts at both the site of the kidnapping and the site where the victim's body was located. Moreover, defense counsel challenged the credibility of Methany's identification by confronting him with the police statement in which he did not identify appellant.[7] Accordingly, we find that it is not reasonably probable that the results of the trial would have been different had Matheny's identification been disclosed to defense prior to trial. Appellant received a fair trial resulting in a verdict worthy of confidence.

{¶ 32} In sum, the State did not violate Crim.R. 16 or *Brady*. Alternatively, even if a Crim.R. 16 violation did occur, it does not rise to the level of reversible error. Therefore, the trial court's decision to deny appellant's motion for mistrial was not an abuse of discretion, and appellant's due process rights were not infringed. Appellant's first assignment of error is overruled.

B.       *Motion for New Trial*

---

[7] This court has previously recognized that *Brady* is not violated when disclosure occurs during trial, even when disclosure surprises the defendant with previously undisclosed evidence, so long as the material is disclosed to the defendant in time for its effective use at trial. *Kulchar*, 2011-Ohio-5144, at ¶ 42-43.

{¶ 33}  In his second assignment of error, appellant contends that the trial court erred when it denied his motion for new trial based upon the State's failure to disclose the prior felony conviction of Matheny.  The State does not dispute that Matheny's prior conviction was not disclosed in pretrial discovery.

{¶ 34}  Crim.R. 33 sets forth the grounds under which a new trial may be granted on the motion of a defendant.  Appellant sought a new trial under grounds (A)(1) and (2), which state:

(A) Grounds.  A new trial may be granted on motion of the defendant for any of

the following causes affecting materially his substantial rights:

(1) Irregularity in the proceedings, or in any order or ruling of the court, or abuse

of discretion by the court, because of which the defendant was prevented from

having a fair trial;

(2) Misconduct of the jury, prosecuting attorney, or the witness for the state; * * *

{¶ 35}  Here, it is undisputed that the State failed to comply with Crim.R. 16(B)(2) which requires the prosecutor to disclose "the record of prior convictions that could be admissible under Rule 609 of the Ohio Rules of Evidence of a witness in the state's case-in-chief * * *."  The issue becomes then, whether the trial court erred in determining that the nondisclosure did not warrant a new trial under Crim.R. 33(A)(1) or (2).

{¶ 36}  Generally, a trial court's denial of a motion for new trial under Crim.R. 33 is reviewed for an abuse of discretion.  *State v. Adams*, 4th Dist. Nos. 04CA2959, 05CA2986, 2009-Ohio-6491, ¶ 80.  " 'However, when the motion for a new trial alleges

prosecutorial misconduct, we undertake a due process analysis to determine whether the misconduct of the prosecutor deprived the defendant of his due process right to a fair trial.' " *Id.*, quoting *State v. Swartz*, 4th Dist. Nos. 479, 495, 1993 WL 97727, *3 (Apr. 2, 1993), in turn citing *State v. Johnston*, 39 Ohio St.3d 48, 59-60, 529 N.E.2d 898 (1988). Therefore, we must determine whether the actions of the prosecutor amount to misconduct so egregious as to deny appellant his fundamental right to a fair trial. *Adams* at ¶ 80.

{¶ 37} In cases where the defendant claims that the prosecutor suppressed properly discoverable, exculpatory evidence, the *Johnston* court notes:

> [T]he usual standards for new trial are not controlling because the fact that such evidence was available to the prosecution and not submitted to the defense places it in a different category than if it had simply been discovered from a neutral source after trial. For that reason, the defense does not have to satisfy the severe burden of demonstrating that newly discovered evidence probably would have resulted in acquittal, the standard generally used to evaluate motions filed under Crim.R. 33. (Citations omitted.) *Johnston* at 60.

{¶ 38} "By withholding evidence favorable to the accused, the prosecution violates the defendant's due process right to a fair trial where the evidence is material either to guilt or punishment, irrespective of the good or bad faith of the prosecutor." *Swartz* at *3, citing *Johnston* at 60.

{¶ 39} As this court has previously stated in *Swartz* at *3:

[T]he key question is whether the suppressed evidence is "material." In *Johnston*, the Ohio Supreme Court adopted the test for materiality set out in *United States v. Bagley* (1984), 473 U.S. 667[, 105 S. Ct. 3365, 87 L.Ed.2d 481.] Under *Bagley*, suppressed evidence favorable to the accused is material only if there is a reasonable probability that the result of the proceeding would have been different if that evidence had been disclosed to the defense. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *Johnston*, paragraph 5 of the syllabus. The test, however, is stringent and the mere possibility that an item of undisclosed information might have helped the defense or might have affected the trial does not establish materiality. *State v. Jackson* (1991), 57 Ohio St.3d 29, 33, [565 N.E.2d 549,] citing *U.S. v. Agurs* (1976), 427 U.S. 97, 109-110, [96 S.Ct. 2392, 49 L.Ed.2d 342.]

{¶ 40} As discussed above, overwhelming evidence was presented at trial that placed appellant in Logan, Ohio, on the night of his wife's disappearance. The GPS mapping analysis and the cell phone records analysis placed appellant in Logan. In addition, numerous witnesses identified the vehicle in which appellant was admittedly traveling in, both at the scene of the abduction and the scene where the victim's body was dumped in the septic system. Contrary to appellant's argument, Matheny's testimony was not so critical that without it, the State could not obtain a guilty verdict. Thus, even if appellant was successful in impeaching the credibility of Matheny by use of the prior felony conviction, that would not be sufficient to undermine confidence in the outcome.

{¶ 41} Thus, the prosecutor's nondisclosure of Matheny's prior felony conviction was not material to appellant's guilt, and the nondisclosure did not violate appellant's due process

right to a fair trial. Accordingly, we find that the trial court did not err in denying the motion for new trial under Crim.R. 33(A)(2).

{¶ 42} Appellant also contends that the trial court erred in denying his motion under Crim.R. 33(A)(1). The decision to grant or deny a motion for new trial filed under Crim.R. 33(A)(1) is committed to the sound discretion of the trial court; and we will not reverse a trial court's denial of the motion absent an abuse of that discretion. *State v. Miniard*, 4th Dist. No. 04CA1, 2004-Ohio-5352, ¶ 40; *State v. Sibert*, 98 Ohio App.3d 412, 433-434, 648 N.E.2d 861 (4th Dist.1994).

{¶ 43} Here, appellant has not shown that the State's failure to disclose the prior conviction of Methany resulted in an irregular proceeding such that he was prevented from having a fair trial. Appellant's motion for new trial was predicated on the fact that Matheny's identification was critical to the State achieving a guilty verdict; and thus, had he had the opportunity to impeach Matheny's credibility with the prior felony conviction the outcome could have been different. A review of the trial record, however, reveals overwhelming evidence of appellant's guilt even absent Matheny's testimony. As we cannot discern any prejudice, we cannot say that the trial court abused its discretion in denying the motion for new trial on this ground. Appellant's second assignment of error is overruled.

C.      *Cumulative Error*

{¶ 44} For his third and final assignment of error, appellant asserts that cumulative errors deprived him of a fair trial. Under the doctrine of cumulative error, "a conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of [the] numerous instances of trial court error does not

individually constitute cause for reversal." *State v. Garner*, 74 Ohio St.3d 49, 64, 656 N.E.2d 623 (1995).

{¶ 45}  "Before we consider whether 'cumulative errors' are present, we must first find that the trial court committed multiple errors." *State v. Harrington*, 4th Dist. No. 05CA3038, 2006-Ohio-4388, ¶ 57, citing *State v. Goff*, 82 Ohio St.3d 123, 140, 694 N.E.2d 916 (1998). Because we have found no errors, the cumulative error principle is inapplicable.  Accordingly, we overrule appellant's third assignment of error.

IV

CONCLUSION

{¶ 46}  Having overruled all three of appellant's assignments of error for the reasons set forth above, we affirm the judgment of the trial court.

JUDGMENT AFFIRMED.

**JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED. Appellant shall pay the costs herein taxed. The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Hocking County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of the proceedings in that court. If a stay is continued by this entry, it will terminate at the earliest of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to the expiration of sixty days, the stay will terminate as of the date of such dismissal

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

McFarland, P.J., and Abele, J.:  Concur in Judgment and Opinion.

For the Court

By:_____
        Marie Hoover, Judge

**NOTICE TO COUNSEL**

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.