THE STATE OF OHIO, APPELLEE, *v.* WILSON, APPELLANT.

(Nos. 48511 and 48518—Decided January 24, 1985.)

*John T. Corrigan,* prosecuting attorney, and *Charles Bauernschmidt,* for appellee.

*Kathleen S. Aynes,* for appellant.

CORRIGAN, C.J. Appellant, William E. Wilson, was indicted on March 15, 1983 and was charged with kidnapping, in violation of R.C. 2905.01, with a specification concerning possession of a firearm, pursuant to R.C. 2941.141, and aggravated robbery in violation of R.C. 2911.01. Appellant waived his right to trial by jury, and on February 16, 1983 he was found guilty by the trial judge on both counts. However, in that the two offenses were of similar import, the trial judge discharged appellant of the kidnapping charge and sentenced him to a term of imprisonment of seven to twenty-five years.

Appellant raises the following two assignments of error on appeal:

"I. When a writing, used by a witness prior to testifying in order to refresh his memory[,] was not required to be produced and was not preserved in the record for purposes of review, the trial court erred in violation of Evid. R. 612 and due process of law as protected by the Fourteenth Amendment.

"II. The trial court erred in violation of Crim. R. 16 and due process of law as protected by the Fourteenth Amendment in not conducting an in camera inspection of a police report containing a statement of the prosecuting witness and in not including the statement in the record."

The victim, Hildred Stewart, was picked up by the Garfield Heights Police following the commission of the crime. Upon determining that the crime had occurred within the city limits of Cleveland, the Garfield Heights police officer conveyed him to the Fourth District Cleveland Police Headquarters. Patrolman Marlin Dennis was at the police desk on January 5, 1983, wrote up the report, and sent the identification of the car taken and a description of the

alleged robber over the police radio. The two detectives assigned as the investigating officers began their work on January 6, 1983 and eventually, on January 13, 1983, took a full written statement from Stewart detailing what had transpired. The statement was typed and then read and signed by Stewart on January 13, 1983.

A close reading of all the testimony is required to unravel the confusion caused, initially, by Stewart's use of the word "statement," and, secondly, by the juxtaposition of the two assignments of error filed by new counsel for defendant-appellant on the appeal and the attempted combination of Evid. R. 612 and Crim. R. 16(B)(1)(g) to the testimony of the witnesses.

Evid. R. 612 provides:

"Except as otherwise provided in criminal proceedings by Rule 16(B)(1)(g) and 16(C)(1)(d) of Ohio Rules of Criminal Procedure, if a witness uses a writing to refresh his memory for the purpose of testifying, either: (1) while testifying; or (2) before testifying, if the court in its discretion determines it is necessary in the interests of justice, an adverse party is entitled to have the writing produced at the hearing. He is also entitled to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness. If it is claimed that the writing contains matters not related to the subject matter of the testimony the court shall examine the writing *in camera*, excise any portions not so related, and order delivery of the remainder to the party entitled thereto. Any portion withheld over objections shall be preserved and made available to the appellate court in the event of an appeal. If a writing is not produced or delivered pursuant to order under this rule, the court shall make any order justice requires, except that in criminal cases when the prosecution elects not to comply, the order shall be one striking the testimony or, if the court in its discretion determines that the interests of justice so require, declaring a mistrial."

Crim. R. 16(B)(1)(g) provides:

"*In camera inspection of witness' statement.* Upon completion of a witness' direct examination at trial, the court on motion of the defendant shall conduct an in camera inspection of the witness' written or recorded statement with the defense attorney and prosecuting attorney present and participating, to determine the existence of inconsistencies, if any, between the testimony of such witness and the prior statement.

"If the court determines that inconsistencies exist, the statement shall be given to the defense attorney for use in cross-examination of the witness as to the inconsistencies.

"If the court determines that inconsistencies do not exist the statement shall not be given to the defense attorney and he shall not be permitted to cross-examine or comment thereon.

"Whenever the defense attorney is not given the entire statement, it shall be preserved in the records of the court to be made available to the appellate court in the event of an appeal."

Called as the first witness for the state, Stewart testified as to what had occurred at the Fourth District station. Upon questioning by the prosecutor, he said:

"Q. All right and did in fact there come a time you communicated with the police?

"A. Yes, I did. I communicated with the officer that was there that night.

"Q. And what basically did you say?

"A. I made the same *statement*. I told him the same thing that I have told you now.

"Q. Did there come a time that you eventually talked to Detective Frank Acierno and Detective * * *

"A. Zalar.

"Q. Zalar?

"A. Absolutely.

"Q. Did there come a time that you, in fact, made a *statement* to them?

"A. Yes.

"Q. Now to your knowledge, they were basically the investigating officers, is that correct?

"A. Yes, they were." (Emphasis added.)

Perhaps the prosecutor did not anticipate the confusion that was to develop later, but he made no attempt to distinguish between what Stewart meant by the language he used and what he did. Likewise, on cross-examination of Stewart, trial counsel for appellant did not clarify what the witness actually meant in his use of the word "statement."

Several pages into the cross-examination, defense counsel said to the witness:

"Q. Now, turning your attention back to January 3 of last year * * *

"[THE PROSECUTOR]: January 5, if I can correct that.

"[DEFENSE COUNSEL]: I am sorry, January 5 of last year, *relating to that incident, did you give a written statement* to the police either at Garfield or Cleveland?

"A. To Cleveland, yes, but not to Garfield.

"Q. Okay, *the written statement,* do you know when it was given?

"A. I don't know the date, no, sir.

"MR. LEVINE: I wonder If I might have it?

"(Thereupon a conference was had between Court and counsel, at the sidebar and off the record.)

"THE COURT: At the conclusion of the direct testimony of the witness, Hildred Stewart, the defendant has moved the Court that it make an in-camera inspection of the original statement given to the Cleveland Police Department by Hildred Stewart on January 13, 1983.

"The Court has made an in-camera inspection of that written statement and has permitted defense counsel also to review that same statement, and the Court is of the opinion as concurred in by defense counsel, that no major or material inconsistency has been detected as between the testimony given in open court and the witness' statement given on January 13, 1983.

"Accordingly, the Court will withhold from the defendant any cross-examination of this witness with respect to the witness' written statement. Anything further, gentlemen?

"MR. LEVINE: Your Honor, I concur in your statement. I may ask when the statement was made or to whom it was made, but as far as using it for cross-examination, will certainly abide by the Court's ruling." (Emphasis added.)

Resuming the cross-examination, defense counsel questioned Stewart about a telephone call from the appellant Wilson after the car was stolen:

"Q. Did he tell you he was calling from out of the state?

"A. No, he didn't.

"Q. Okay, and you, of course, were very concerned about your car?

"A. Yes.

"Q. And this was before you gave any written statement to any Cleveland Police Officer?

"A. No, I gave the statement before.

"Q. When was the statement given?

"A. That night, and I gave — yes, I gave a statement that night.

"Q. The 5th of January?

"A. Right, the same night that it happened.

"Q. Was there a statement given on January 13, also?

"A. Yes, it was.

"Q. Two statements you gave to the police?

"A. Right, I gave one to Detective

Zalar and one to a policeman, uniformed policeman at Fourth District.

"Q. That was right after the incident?

"A. Right.

"Q. But the statement was transcribed, what was written down or talked out and you signed that was given on January 13th?

"A. Right.

"Q. About a week after your car was taken?

"A. I believe so, yes."

Trial counsel for appellant obviously was satisfied at this juncture that there was only one written statement, because no attempt was made to pursue the question with the witness still on the stand. Further, no request was made to examine any other written statement of the witness, if, in fact, one existed. Counsel had earlier concurred with the court that there were no inconsistencies with the written statement of January 13, 1983, and the testimony of the witness.

A demand for inspection of a witness' statement under Crim. R. 16(B)(1)(g) may be made immediately upon the completion of direct examination or at any time during the cross-examination. The *in camera* inspection in accordance with the rule is *mandatory* upon motion by the defendant. *State* v. *Ellis* (1975), 46 Ohio App. 2d 102 [75 O.O.2d 83]. See, also, *State* v. *White* (1968), 15 Ohio St. 2d 146 [44 O.O.2d 132]; *Cleveland* v. *Austin* (1978), 55 Ohio App. 2d 215 [9 O.O.3d 368].

It is the state's position that defense counsel's request was not timely made in that it was during the cross-examination of the victim, Stewart, that it became apparent that he had made a "statement" to the police on January 5, 1983. Therefore, the request should have been made at this time.

In short, while Stewart was testifying, the defense properly invoked Crim. R. 16(B)(1)(g) as to the witness' written statement of January 13, 1983, and by not pursuing the possibility of the existence of any other written statements while he was still on the stand, counsel waived any right to seek any *in camera* inspections of this witness' "statements" during the cross-examination of subsequent witnesses. The purpose of Crim. R. 16(B)(1)(g) is to provide defense counsel with the opportunity to inquire during cross-examination of a witness as to inconsistencies between the direct testimony and a prior written statement of that witness.

At the commencement of cross-examination of Patrolman Marlin Dennis, defense counsel, relying on Evid. R. 612, inquired of him as to whether he had used any written report or memorandum to refresh his recollection prior to testifying. He responded in the affirmative. At that point, defense counsel made a motion for an *in camera* inspection of this writing.

Appellant contends that, since Patrolman Dennis stated he used a writing or memorandum to refresh his recollection, Evid. R. 612 provides that such a writing may be produced.

It should be noted that the invocation of this rule is discretionary with the trial court. Furthermore, and more importantly, in the trial of a criminal case an accused's counsel is not entitled to inspect a written police report where an officer does not use the report while testifying notwithstanding the fact that he has read it to refresh his recollection prior to taking the witness stand. *State* v. *Smith* (1976), 50 Ohio App. 2d 183, 201 [4 O.O.3d 160]; *State* v. *Strain* (1948), 84 Ohio App. 229 [39 O.O. 289]; *State* v. *Taylor* (1947), 83 Ohio App. 76 [38 O.O. 150].

There is no indication in the record that Patrolman Dennis was testifying from any writing to refresh his memory. After stating his name, position with the police department and years on the job, he responded to the following questions:

"Q. And which district do you work out of?

"A. The Fourth District.

"Q. And going back to the date of January 5, 1983, were you on duty on that day, sir?

"A. Yes.

"Q. Now, did there come a time that in fact, you had conversation with Hillary Stewart?

"A. Yes.

"Q. Now, could you set up the scene, basically, Officer, as to what your duties were when you first came upon Mr. Stewart?

"A. I was working in the office that day, and he came in and wanted to make a police report.

"Q. Do you happen to know approximately what time of day this was?

"A. It was at night, that's all I know.

"Q. How did he appear to you at that time?

"[MR. LEVINE]: Objection.

"THE COURT: Overruled; he may answer.

"THE WITNESS: He appeared nervous.

"Q. (By the Prosecutor) How do you — when you say he appeared nervous, why do you say that, Officer?

"A. He was sort of shaking, and basically, he was just sort of shaking.

"Q. Did there come a time that you talked with Mr. Stewart?

"A. Yes.

"Q. After you got through talking with Mr. Stewart, what did you then do?

"A. I made the report, and I notified police radio, and gave them the description of the auto and the suspect.

"Q. Did there come a time in checking with Mr. Stewart, did you smell at any time any alcohol around Mr. Stewart?

"A. No.

"MR. BAUERNSCHMIDT: No further questions.

"THE COURT: Mr. Levine?

"MR. LEVINE: Thank you."

Before quoting from the record on the cross-examination of Dennis by defense counsel, it should be pointed out that none of the questions deals with what the officer did or whether or not any written statements were given by Stewart. It is established that the officer looked at a written report or memorandum to refresh his recollection prior to coming to court, and that "it was about a year" and he remembered "a little bit." Defense counsel then moved for an *in camera* inspection of the police report and after the court's ruling asked no further questions of the police officer.

"CROSS-EXAMINATION

"BY MR. LEVINE:

"Q. Officer Dennis, have you used any type of written report or memorandum to refresh your recollection prior to coming to court today?

"A. Yes.

"Q. When was that?

"A. Are you asking me when I looked at it?

"Q. Yes, sir.

"A. A few minutes ago.

"Q. Do you have any independent recollection of the events of January 5th and 6th of 1983?

"A. It was about a year ago, but I remember a little bit.

"Q. I wonder if I might — may I approach the bench?

"THE COURT: Yes, you may.

"(Thereupon a conference was had between Court and counsel, off the record.)

"THE COURT: At the conclusion of the direct testimony of Patrolman Marlin Dennis, that witness indicated that he had reviewed a police report which he prepared on the 6th day of January, 1983 with respect to this matter, and that such review of the report took place this morning prior to his coming into the court to testify. The witness

has given testimony of an apparent written document here in open court.

"The defendant has moved the Court that it make an in-camera inspection of the police report in question to determine whether there were any inconsistencies between the testimony given in open court and the statement as prepared by the police officer on the 6th day of January.

"The Court being of the opinion that the police reports are not discoverable has declined to grant the request of the defendant. The defendant does take exception and the record should so note it.

"Anything further?

"MR. LEVINE: My request and my motion to the Court should also encompass any written memorandum of reports not exclusively the police report, and I believe under Criminal Rule 16 those are discoverable within the purview of the evidence rule 612, this may be considered as a statement of a witness and therefore discoverable under evidence rule 16.

"Thank you, your Honor.

"THE COURT: You may proceed, Mr. Levine.

"MR. LEVINE: Your Honor, with the proffer made into the record, I have no further questions."

After the ruling that the police report was not discoverable (and no attempt was made to establish that it was more than a police report), the defense counsel sought to engraft the Crim. R. 16(B) right to inspect a witness' statement onto the Evid. R. 612 right to inspect a writing used to refresh memory before testifying. Under Crim. R. 16(B)(1)(g), defense counsel had the right to inspect the witness' Stewart's statement for use in cross-examination, if the request had been timely made. A request was not timely made then and cannot now be sought indirectly by resorting to Evid. R. 612. The effect of counsel's amended motion seeking to combine Crim. R. 16(B)(1)(g) with Evid.

R. 16(B)(2) could completely emasculate Crim. R. 16(B)(2). Neither the General Assembly nor any court decision to date has relegated the "work product" rule and Crim. R. 16(B)(2) to a lower status.

The rules of discovery exercised during trial are not automatic keys available upon mere citation of a rule number. Counsel has the responsibility of demonstrating their entitlement to the information sought by developing a record that raises questions, and outlines issues requiring a ruling in their favor.

On the state of the full record in the instant case, we find the trial court did not err or abuse its discretion as claimed in the two assignments of error. Further, we conclude that the preservation of any writings for review on appeal under both rules has no application to the factual situation developed from all the testimony.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

PARRINO, J., concurs.

JACKSON, J., dissents.

JACKSON, J., dissenting. I respectfully dissent.

With respect to appellant's first assigned error the majority determined that under the evidence in the case, it was not error for the trial court to refuse to require a writing to be produced or preserved in the record for review on appeal because it had been used by Officer Dennis to refresh his memory prior to testifying.

At the beginning of cross-examination, Officer Dennis testified that *he reviewed the report or memorandum prior to testifying*:

"Q. Officer Dennis, have you used any type of written report or memorandum to refresh your recollection prior to coming to court today?

"A. Yes.

"Q. When was that?

"A. Are you asking me when I looked at it?

"Q. Yes, sir.

"A. A few minutes ago.

"Q. Do you have any independent recollection of the events of January 5th and 6th of 1983?

"A. It was about a year ago, but I remember a little bit."

The trial court then denied appellant's motion for an *in camera* inspection of the report to determine whether it contained any inconsistencies. The trial court determined that "police reports are not discoverable." The statement or report was not preserved for appeal and therefore is not available as part of this record.

Statements governed by Crim. R. 16(B)(1)(g) and 16(C)(1)(d) are excepted from provisions of Evid. R. 612. Consequently, provisions of Crim. R. 16(B)(1)(g) and not Evid. R. 612 are applicable to the facts herein.

Crim. R. 16(B)(1)(g) provides:

"*In camera inspection of witness' statement.* Upon completion of a witness' direct examination at trial, the court on motion of the defendant shall conduct an in camera inspection of the witness' written or recorded statement with the defense attorney and prosecuting attorney present and participating, to determine the existence of inconsistencies, if any, between the testimony of such witness and the prior statement.

"If the court determines that inconsistencies exist, the statement shall be given to the defense attorney for use in cross-examination of the witness as to the inconsistencies.

"If the court determines that inconsistencies do not exist the statement shall not be given to the defense attorney and he shall not be permitted to cross-examine or comment thereon.

"Whenever the defense attorney is not given the entire statement, it shall be preserved in the records of the court to be made available to the appellate court in the event of an appeal."

Crim. R. 16(B)(2) makes the following exception:

"*Information not subject to disclosure. Except as provided in subsections* (B)(1)(a), (b), (d), (f), and (g), this rule does not authorize the discovery or inspection of reports, memoranda, or other internal documents made by the prosecuting attorney or his agents in connection with the investigation or prosecution of the case, or of statements made by witnesses or prospective witnesses to state agents." (Emphasis added.)

This court with respect to this issue, has stated:

"When these portions of Criminal Rule 16 are read together they make it clear that in camera 'inspection of reports, memoranda, or other internal documents made by the prosecuting attorney or his agents [*i.e.,* the police] in connection with the investigation or prosecution of the case' *is mandated* when the person who prepared such report, memorandum or document takes the stand as a witness in a criminal proceeding to testify about the events of which he claims to have personal knowledge and which he recorded in that document." *State* v. *Smith* (1976), 50 Ohio App. 2d 183, 196 [4 O.O.3d 160].

This court has also held in *State* v. *Owens* (Oct. 2, 1980), Cuyahoga App. No. 40472, unreported, that:

"Where that report merely consists of a summary or description of events of which the officer has personal knowledge and is signed by him, and where that officer takes the stand to testify about those same events, the report should be treated as a Crim. R. 16(B)(1)(g) witness' statement, *see State* v. *Smith* (1976), 50 Ohio App. 2d 183, 195-196, and the officer should be impeachable in the same fashion as any

other witness." See *State* v. *Johnson* (1978), 62 Ohio App. 2d 31 [16 O.O.3d 74].

Moreover, according to the holding in *State* v. *Borsick* (1978), 62 Ohio App. 2d 39 [16 O.O.3d 79], it was error for the trial court to refuse to impound the police report for purposes of appellate review:

"A witness' prior statement otherwise subject to the in camera inspection provisions of Criminal Rule 16(B)(1)(g) is not excepted from those provisions on the ground that the statement is the work product of the prosecution." *Id.* at syllabus.

I am further persuaded that the evidence does not support the majority determination in appellant's second assigned error that the trial court acted properly in failing to conduct an *in camera* inspection of a police report containing a statement of prosecuting witness Hildred Stewart, and in failing to include that statement in the record.

The record discloses that defense counsel initiated the following exchange during the testimony of state witness Hildred Stewart:

"MR. LEVINE: I am sorry, January 5 of last year, relating to that incident, did you give a written statement to the police either at Garfield or Cleveland?

"A. To Cleveland, yes, but not to Garfield.

"Q. Okay, the written statement, do you know when it was given?

"A. I don't know the date, no, sir.

"MR. LEVINE: I wonder if I might have it?

"(Thereupon a conference was had between Court and counsel, at the sidebar and off the record.)"

The state then produced a statement by Hildred Stewart which had been given to the Cleveland Police Department on January 13, 1983. After an *in camera* inspection of the January 13 statement, the trial court ruled that no material inconsistency existed between the January 13 statement and the testimony at trial.

During subsequent cross-examination, however, it became apparent that Stewart gave the Cleveland Police Department an earlier statement on January 5, 1983. Defense counsel, however, failed to move at that time for inspection of the January 5 statement.

The state argued and the majority agrees that appellant waived his right of inspection, because he failed to timely move for an *in camera* inspection pursuant to Crim. R. 16(B)(1)(g). I am persuaded, however, that the existence of this statement should have been disclosed during the examination of Stewart when defense counsel initially inquired.

Defense counsel inquired of the witness whether he gave a statement on *January 5*. The witness testified that he had given a statement, but did not know the date. The state then produced a statement given on *January 13*. Under these circumstances, the state had a clear duty to produce both statements, or at a minimum, the January 5 statement. Simply because the witness could not remember the date certainly should not endow the state with authority to pick and choose which statement it chooses to release for inspection. The appellant argued and I agree that the January 5 statement could have been critical to his defense.

Therefore, I would reverse this case and remand it to the trial court with orders to review the reports relevant to both witnesses to determine whether they are work product under Crim. R. 16(B)(2) or a statement under Crim. R. 16(B)(1)(g). If the court should determine that the reports are statements, the court must then decide if inconsistencies exist which are of such consequence that the failure to permit defense counsel to use the statement for impeachment purposes denied appellant a

fair trial. If it were to so find, a new trial should be ordered. However, if the court were to determine that no such inconsistencies exist, or that it is not a statement, the court could reaffirm its former judgment and enter a new judgment upon the verdict of guilty. In either case, the document should be retained in the record for this or any other appellate court to review. *State* v. *Corethers* (June 23, 1983), Cuyahoga App. No. 45712, unreported, at 5-6.