JOURNAL ENTRY AND OPINION
Defendant-appellant Ricky Conner ("appellant") appeals from his conviction for three counts of aggravated murder in violation of R.C. 2903.01 and one count of having a weapon while under a disability in violation of R.C. 2929.13.
Appellant assigns the following errors for review:
 I. THE COURT ERRED WHEN IT DENIED THE APPELLANT'S MOTION FOR JUDGMENT OF ACQUITTAL MADE AT THE END OF THE STATE'S CASE (RULE 29[A], OHIO RULES OF CRIMINAL PROCEDURE) AND RENEWED AT THE CLOSE OF ALL EVIDENCE.
 II. THE DEFENDANT'S RIGHT OF CONFRONTATION AND HIS RIGHT TO DUE PROCESS WERE DENIED IN THE WAKE OF THE COURT'S REFUSAL TO ALLOW THE DEFENSE TO MAKE FULL USE, OR EVEN ANY USE, OF THE WRITTEN STATEMENTS MADE FOR THE POLICE BY THE WITNESSES MAURICE CLARK, JERMANEE MORRISON AND OTHERS.
 III. THE COURT ERRED AND THE APPELLANT'S RIGHT OF CONFRONTATION WAS VIOLATED WHEN THE COURT ALLOWED THE STATE TO PRODUCE CONSIDERABLE, EGREGIOUSLY PREJUDICIAL, HEARSAY THROUGH THE TESTIMONY OF DETECTIVE JONES.
 IV. GIVEN THE FACT THAT THE JURY REQUESTED THEY BE ALLOWED TO HAVE A NIGHT VIEW OF THE SCENE, THE COURT DENIED THE DEFENDANT DUE PROCESS AND A FAIR TRIAL WHEN SHE REFUSED SUCH A VIEW BECAUSE, IN EFFECT, THE SAFETY OF THE JURORS COULD NOT BE INSURED.
Finding the appeal to lack merit, we affirm the judgment of the trial court.
 I.
In the early morning hours of July 20, 1998, nineteen-year old Louis Nobles ran from between two buildings and onto Euclid Avenue in East Cleveland. Another man followed after Nobles. Nobles pleaded, "This is Lou, Rick, please don't shoot me no more." At that same time, Jermanee Morrison was in a car with her husband at the corner of Euclid Avenue and Taylor. Morrison saw a person she later identified as appellant chase Nobles from between two buildings before shooting Nobles in the back three times. Appellant stood over Nobles as he lay in the street before turning away. Appellant noticed Nobles beginning to crawl away. Appellant approached Nobles and shot Nobles in the head. Appellant remained there for a moment before turning away. Morrison later stated she was familiar with appellant because she had seen him in the neighborhood.
Walter Briggs looked out the window of his residence after being awoken by a loud noise. Briggs saw two people running before one of the people was shot by the other. Briggs identified appellant as the shooter. Briggs also averred that appellant returned to Nobles after Nobles began to crawl. Appellant shot Nobles three more times. Nobles died from seven gunshot wounds.
East Cleveland Police Officer Brian Gerhard was en route to a call about a unit needing assistance when he heard gunshots. Officer Gerhard and his partner discovered Nobles lying face down in a pool of blood in the middle of Euclid Avenue. Other police officers responded to the scene.
Police soon discovered the body of eighteen-year old Marlandus Harvey in the area between the two vacant buildings. Harvey was on his back with his right hand in his pants pocket. Harvey died from a single gun shot wound to the back of his head. Harvey's body was located approximately forty to fifty feet from that of Nobles.
In a nearby parking lot, police found yet another body, that of twenty-four year old Ricky Nickerson. Nickerson was discovered in the front passenger seat of an automobile with one foot up on the dashboard, seemingly relaxed. Nickerson had been shot three times in the head. Appellant's fingerprints and palm print were discovered on the outside of the automobile.
Nobles, Nickerson, Harvey, and appellant were all friends. The four supported their use of narcotics by selling drugs to others. Appellant had been seen in the company of the three victims at various times throughout the evening of July 19, 1998, and the early morning hours of July 20, 1998. The four were seen together as late as 2:32 a.m. The shootings took place about a half hour later, at approximately 3:00 a.m. Harvey was known to keep a .32 caliber weapon in the alley where he died. Some of the gunshot wounds Harvey suffered were from a .32 caliber weapon. All of the rest of the bullets were from a .22 caliber weapon, the same type appellant admitted carrying. Appellant claimed to have sold his weapon earlier that evening.
Aliyyah and Floyd Johnson, relatives of Harvey, saw appellant at 4:00 a.m. on July 20, 1998, near the site of the shootings. Aliyyah Johnson asked appellant if he knew Nobles had been shot. The Johnsons had not yet learned of Harvey's demise. Appellant did not respond at first. Appellant did say he had seen Harvey earlier and stated he would go to the scene but neither of the Johnsons saw appellant there later. Appellant expressed no emotions or reaction to the news of Nobles' death.
All three victims had marijuana and phencyclidine or PCP in their systems when they died. PCP is associated with psychotic behavior. A month or two before the shooting, appellant was together with Harvey, appellant's brother, and Bernard Martin in an automobile. The four were smoking marijuana dipped in PCP. Appellant placed a gun in his mouth. Appellant stepped out of the car with a crazed look on his face. As Martin started the car, appellant began shooting through the rear window. Martin drove away but not before Harvey was slightly wounded.
The police arrested appellant at approximately 7:30 a.m. on July 20, 1998. The next day, the police discovered gunshot residue on both of appellant's hands. The grand jury indicted appellant for three counts of aggravated murder. Each count contained a mass murder specification and a firearm specification. Appellant also was charged with one count of having a weapon while under a disability. The jury convicted appellant on all four counts as well as all of the specifications. The jury recommended appellant be sentenced to a term of life imprisonment without parole on the aggravated murder convictions. The trial court imposed consecutive sentences of life imprisonment without parole on each aggravated murder charge plus three years for the gun specifications. Appellant received a sentence of eighteen months for having a weapon while under a disability, also to be served consecutively.
 II.
Appellant's first assignment of error challenges the trial court's denial of appellant's Crim.R. 29(A) motion for acquittal. Although appellant's assignment of error states that the motion was renewed at the close of all evidence, the record reveals otherwise. A defendant waives any assertion of error if the defendant fails to renew the Crim.R. 29 motion after presenting evidence in his defense. State v. Miley (1996), 114 Ohio App.3d 738
. Because appellant did not renew his Crim.R. 29(A) motion at the close of all evidence, he has waived any claim of error in the denial of the motion. Appellant's first assignment of error is overruled.
 III.
In his second assignment of error, appellant asserts that the trial court denied appellant his right to confrontation by refusing to allow defense counsel to cross-examine prosecution witnesses by inquiring about the contents of the witnesses' police statements. Appellant argues he had an unfettered right to information possessed by the state which would be beneficial to the defense. Appellant contends the trial court erred by ruling that the defense was entitled to use the statements only if there were inconsistencies between the statements and the testimony of the witnesses on direct examination.
Appellant relies on Brady v. Maryland (1963), 373 U.S. 83, to support his argument. In Brady, the United States Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution."Id. at 87. "Exculpatory" is defined as "clearing or tending to clear from alleged fault or guilt." Black's Law Dictionary (5 Ed. Abridged. 1983) 292. The duty to disclose under Brady includes impeachment as well as exculpatory evidence. United States v.Bagley (1985), 473 U.S. 667, 676. However, the suppression of this evidence will be deemed a constitutional violation only if the defendant was deprived of a fair trial. Id. at 678. Such evidence is material if there is a reasonable probability that, had the evidence been disclosed, the result of the trial would have been different. Id. at 682. Evidence known to the police but not the prosecutor is included in the Brady duty to disclose.Kyles v. Whitley (1995), 514 U.S. 419.
The components of a Brady violation are: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence must have been suppressed by the state, either willfully or inadvertently; and (3) prejudice must have ensued. Strickler v.Greene (1999), 527 U.S. 263. Brady only applies in situations in which information known to the prosecution but unknown to the defense is discovered after trial. State v. Brown (1996),112 Ohio App.3d 583, 595. In the instant case, the prosecution did not suppress the evidence. Appellant possessed the statements at trial. Because the prosecution did not suppress the statements in question, no Brady violation occurred.
A reading of Brady and its progeny shows that the line of cases concerns the suppression of evidence, documents, or notes favorable to the defense by the state or police. Brady has nothing to do with an evidentiary ruling made by a trial court. Appellant's Brady argument is inapposite. Instead, Crim.R. 16(B)(1)(g) applies to appellant's argument. Crim.R. 16(B)(1)(g) provides:
 Upon completion of a witness' direct examination at trial, the court on motion of the defendant shall conduct an in camera inspection of the witness' written or recorded statement with the defense attorney and prosecuting attorney present and participating, to determine the existence of inconsistencies, if any, between the testimony of such witness and the prior statement.
 If the court determines that inconsistencies exist, the statement shall be given to the defense attorney for use in cross-examination of the witness as to the inconsistencies.
 If the court determines that inconsistencies do not exist the statement shall not be given to the defense attorney and he shall not be permitted to cross-examine or comment thereon.
 Whenever the defense attorney is not given the entire statement, it shall be preserved in the records of the court to be made available to the appellate court in the event of an appeal.
The purpose of Crim.R. 16(B)(1)(g) is to provide defense counsel with the opportunity to cross-examine a prosecution witness about any inconsistencies between direct testimony and a prior statement made by that witness. State v. Wilson (1985), 23 Ohio App.3d 111
. The statement is discoverable only after the direct examination of the witness concludes and if the trial court determines inconsistencies exist after it conducts an in camera inspection. State v. Edwards (Sept. 4, 1997), Cuyahoga App. No. 70467, unreported. The trial court's determination as to whether any inconsistency exists is reviewed under the abuse of discretion standard. State v. Clay (1972), 29 Ohio App.2d 206,212. An abuse of discretion is more than an error of law or judgment, it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. State v. Keenan
(1998), 81 Ohio St.3d 133, 137.
At trial, defense counsel argued that the statement of Jermanee Morrison was inconsistent with her testimony on direct examination. Appellant's attorney pointed out that Morrison did not identify appellant in her statement. At trial Morrison testified she recognized appellant from the neighborhood. However, matters testified to at trial which are omitted from a police report are not necessarily considered inconsistent under Crim.R. 16. Euclid v. Key (Feb. 27, 1997), Cuyahoga App. Nos. 69382, 69383, unreported. The trial court correctly determined that there were not inconsistencies between Morrison's testimony on direct examination and her police statement.
In this assignment of error, appellant mentions that he should have been able to cross-examine Maurice Clark about the contents of Clark's police statement. Appellant never explains exactly why the trial court abused its discretion by determining that Clark's direct testimony and his police statement were consistent. At trial, defense counsel raised Brady, which was addressed above. Defense counsel argued that Clark's statement was inconsistent with the testimony of another witness. Crim.R. 16(B)(1)(g) makes no provision for the in camera inspection of the statement of one witness to impeach another witness. State v. Huckabee (Oct. 26, 1995), Cuyahoga App. No. 67588, unreported. Any inconsistencies between the statement of one witness and the testimony of a different witness are not discoverable under Crim.R. 16(B)(1)(g). The trial court did not abuse its discretion in ruling that Clark's statement and his direct testimony were consistent.
Appellant's second assignment of error lacks merit.
 IV.
In his third assignment of error, appellant argues the trial court erred by permitting the prosecutor to question a police detective about statements made by two other prosecution witnesses. Appellant submits that the testimony was inadmissible hearsay and prejudiced his defense.
During the direct examination of East Cleveland Police Detective Ronald Jones, the prosecutor asked Detective Jones to identify the six photographs used in the identification of appellant by Jermanee Morrison and Walter Briggs. On cross-examination, defense counsel asked a number of questions regarding the process used by the police in having the witnesses identify the person they observed shoot Nobles. Defense counsel specifically inquired whether the witnesses were shown the photographs before or after they described the assailant.
On re-direct examination, the prosecutor asked Detective Jones to identify the police statements made by Morrison and Briggs. The prosecutor directed Detective Jones' attention to the portions of the statements about the descriptions of the person they saw shoot Nobles. Detective Jones read the descriptions given by both witnesses. The prosecutor asked Detective Jones if the descriptions were given prior to both witnesses looking at the photograph line-up. Detective Jones replied in the affirmative.
A trial court has broad discretion over the admission of evidence. State v. Long (1978), 53 Ohio St.2d 91. In order to constitute an abuse of discretion, the evidentiary ruling must be "so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias." Nakoff v.Fairview Gen. Hosp. (1996), 75 Ohio St.3d 254, 256.
"Hearsay" is defined as a statement, other than one made by the declarant while testifying at trial, offered in evidence to prove the truth of the matter asserted. Evid.R. 801(C). The record reflects that the statements contained in the police reports were not offered to prove the truth of the matter asserted. The prosecutor did not attempt to prove that the descriptions of the assailant given by the witnesses were accurate or true but merely sought to show that the descriptions were made before the witnesses saw the photographs. The statements were offered to show that the words were said, not that the words were truthful. Therefore, the testimony of Detective Jones with regard to the police statements of Morrison and Briggs was not hearsay.
Further, defense counsel heavily inquired about the timing of the descriptions by the witnesses, implying the descriptions were influenced by the photographs. The prosecution may properly explore a line of questioning initiated by the defendant. Statev. Keith (Mar. 13, 1997), Cuyahoga App. No. 69267, unreported. Because appellant opened the door regarding when Morrison and Briggs described the murderer, he cannot now complain about the prosecution's questions about the same subject.
Appellant's third assignment of error is not well-taken.
 V.
In his fourth assignment of error, appellant contends the trial court abused its discretion by refusing to grant the jury's request that it view the scene of the crime at night. Appellant argues that because the request came from the jury, the trial court should have given great deference to the inquiry. Appellant maintains that the reasons given by the trial court for refusing to allow the jury view were indefensible.
R.C. 2945.16 permits a trial court to order a jury view of the place where a material fact occurred. The decision of whether or not to grant a jury view lies within the sound discretion of the trial court. State v. Lundgren (1995), 73 Ohio St.3d 474. A view of the crime scene is not evidence or a crucial stage of the proceedings. State v. Richey (1992). 64 Ohio St.3d 353. Jury views are not to be used to impeach or attack the credibility of witnesses. State v. Smith (1993). 90 Ohio App.3d 177. Photographs and descriptive testimony often make jury views unnecessary, especially when other hazards may be created by accommodating the request. See State v. Zuern (1987), 32 Ohio St.3d 56; State v.Cochran (June 25, 1992), Franklin App. No. 91AP-1371, unreported.
The trial court refused to grant the jury's request to view the scene of the crime because the view would not be evidence and the jury had not had time to begin considering any of the evidence before making its request. The trial court also mentioned concerns for the jury's safety.
Numerous photographs of the scene were admitted during trial and many of the witnesses described the area during their testimony. Whether or not to grant a request for a jury view is completely discretionary with the trial court, no matter if the source is the prosecution, the defense, or the jury. Appellant is well aware that the jury could not consider anything observed at the scene as evidence. Although stating that the trial court's ruling was indefensible, appellant never exactly explains why this is so. This court finds to the contrary. The trial court expressed legitimate reasons for not allowing the jury view. That ruling was not unreasonable, arbitrary, or unconscionable.
Appellant's fourth assignment of error lacks merit.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
DIANE KARPINSKI, P.J. and KENNETH A. ROCCO, J. CONCUR.
 __________________________________ LEO M. SPELLACY, JUDGE