Defendant-appellant, Margaret Lyons, appeals from the verdict of the trial court wherein she was found guilty of two counts of obstruction of justice subsequent to a bench trial.
The appellant was indicted together with several co-defendants in a six count indictment which was issued on October 5, 1998. Only counts five and six, both alleging obstruction of justice, were applicable to the appellant. The appellant entered a plea of not guilty on November 19, 1998. On April 7, 1999, after the appellant executed a written jury trial waiver, the case proceeded to trial. Prior to the commencement of the trial, the appellant's attorney entered into a stipulation as to much of the evidence that was to be presented based on testimony already given in the prior trial of a co-defendant which had been heard in front of the same trial judge who presided over the appellant's trial.
On April 8, 1999, after hearing all of the evidence, the appellant was found guilty on both counts. Thereafter, on April 30, 1999, the appellant was sentenced to two years of community control sanctions under the supervision of the Adult Probation Department.
The obstruction of justice charges brought against the appellant arose out of a shooting that took place on February 22, 1998. The gunman in the shooting was the appellant's son, Frank Manley. At the time of the shooting Manley was accompanied by a Deonte Matthews and a Rodney Nichols. Both Manley and Matthews were juveniles on the day of the shooting. Nichols was the boyfriend of Frank Manley's aunt, Eileen Finley. The murder took place in the course of a robbery involving both cash and drugs from a known drug dealer. Manley walked up to the window of a car in a residential driveway where the drug dealer was stationed while waiting for a prospective buyer to exit the house and shot the dealer. After the shooting Manley, Matthews, and Nichols returned to a house belonging to Eileen Finley.
Frank Manley, the appellant's son, lived at the house of Eileen Finley, who is Manley's aunt and the appellant's sister. Also at the house on the night in question were Alphonso and Charles Finley. Alphonso Finley is the natural son of Eileen Finley. Charles Finley is a nephew of Eileen Finley whom she adopted after his natural parents died. Alphonso and Charles were both full-time residents of the house.
Police arrived at the house in the early morning hours and after searching the house and questioning some of the occupants, arrested Manley and Matthews. At this time the police also seized a red coat which they believed was worn by Manley at the time of the murder. It turned out that the police took the wrong red coat from the home. The coat that was seized, which bore the logo of the San Francisco Forty-Niners, belonged to Alphonso Finley. Alphonso told the police at the time they were leaving the house that the jacket they were seizing belonged to him, but the police apparently did not believe him. As a result of the police seizing the wrong jacket, the red jacket that Manley had actually been wearing at the time of the murder remained in the house after the police had left.
Soon after the police departed the premises, the appellant, who had already been summoned to the home, was apprised of the situation involving the two red jackets. Allegedly, at this juncture the appellant told several persons in the house something to the effect of we got to burn the coat. The coat was in fact burned, although the ashes remained in the yard for more than a month before being recovered by the police.
The appellant was indicted on two separate counts for her role in the destruction of the red coat that was worn by Frank Manley at the time of the shooting. The first count alleged obstruction of justice as it related to the aggravated robbery charges against the other defendants. The second count alleged obstruction of justice as it related to the murder count against the other defendants.
The appellant assigns four errors for this court's review. The first assignment of error states:
 I. THE TRIAL COURT ERRED BY FAILING TO PROPERLY ADHERE TO CRIM.R.16(B)(1)(g) TO THE PREJUDICE OF THE DEFENDANT.
The appellee, State of Ohio, herein concedes that the trial court erred in failing to comply with Crim.R. 16(B)(1)(g) when it refused defense counsel's request made during cross-examination that the court conduct an in camera inspection of the written statement provided by Alphonso Finley. The trial court based its errant ruling on its belief that such a request needed to be made by defense counsel prior to or at the close of direct examination.
Crim.R. 16(B)(1)(g) provides:
 Upon completion of a witness' direct examination at trial, the court on motion of the defendant shall conduct an in camera inspection of the witness' written or recorded statement with the defense attorney and prosecuting attorney present and participating, to determine the existence of inconsistencies, if any, between the testimony of such witness and the prior statement.
 If the court determines that inconsistencies exist, the statement shall be given to the defense attorney for use in cross-examination of the witness as to the inconsistencies.
 If the court determines that inconsistencies do not exist the statement shall not be given to the defense attorney and he shall not be permitted to cross-examine or comment thereon.
 Whenever the defense attorney is not given the entire statement, it shall be preserved in the records of the court to be made available to the appellate court in the event of an appeal.
The purpose of Crim.R. 16(B)(1)(g) is to provide defense counsel with the opportunity to cross-examine a prosecution witness about any inconsistencies between direct testimony and a prior statement made by that witness. State v. Wilson (1985), 23 Ohio App.3d 111
. The statement is discoverable only after the direct examination of the witness concludes and if the trial court determines inconsistencies exist after it conducts an in camera inspection. State v. Edwards (Sept. 4, 1997), Cuyahoga App. No. 70467, unreported.
In State v. Schnipper (1986), 22 Ohio St.3d 258, [22 Ohio St.3d 158] the Supreme Court of Ohio stated that a motion for an in camera inspection of a witness' prior written statement can be made at any time after completion of a the witness' direct examination, but prior to the completion of the witness' cross-examination. (Emphasis added.)
In State v. Fields (Dec. 31, 1997), Delaware App. No. 95CAA-08-048, unreported, the court addressed the timeliness of a Crim.R. 16(B)(1)(g) motion made during cross-examination in the following manner:
 The trial court and appellee would engraft a "but before the commencement of cross-examination" requirement into the rule. The rule does not limit the time for making the motion to the period between the conclusion of direct examination and the commencement of cross-examination.
 The rule only requires that the motion be made after the witness' direct examination is completed. If the legislature wished to create such a time frame, language to effectuate that intent would have been included in the rule. In the absence of this language, we find appellant's request for inspection of Detective Drum's reports was timely made.
This court also concludes that a motion for an in camera inspection under Crim.R. 16(B)(1)(g) may be properly made during cross-examination, although the written statement may only be used to impeach testimony elicited during direct examination.[1]
Despite the fact the trial court improperly denied appellant's trial counsel's request to conduct an in camera inspection of Alphonso Finley's written statement, we find that the decision constituted harmless error. Pursuant to a joint motion to correct the record filed by all of the parties to this case, the written statement of Alphonso Finley has been made part of the record for the purposes of this appeal. We have reviewed the statement and find it consistent with Alphonso's testimony during direct examination. The written statement does not even mention anything about the burning of the jacket, but, rather, relates to the culpability of the co-defendants on the aggravated robbery and murder charges. The appellant is only referred to tangentially in the written statement as allegedly arguing with Alphonso as to whose fault it was that Frank Manley was arrested.
Finding no prejudice to the appellant arising out of the trial court's erroneous ruling on the motion for an in camera inspection of the prior written statement, this assignment of error is overruled.
The appellant's second assignment of error states:
 II. DEFENSE COUNSEL'S FAILURE TO OBJECT TO THE TRIAL COURT'S DENIAL OF AN IN CAMERA INSPECTION OF ALPHONSO FINLEY'S STATEMENT AND THE FAILURE TO REQUEST PRESERVATION OF THE STATEMENT DENIED DEFENDANT EFFECTIVE ASSISTANCE OF COUNSEL.
Given our disposition of the appellant's first assignment of error, as well as the fact that the written statement of Alphonso Finley is now part of the record in this appeal, this assignment of error is rendered moot.
The appellant's third assignment of error states:
 III. THE STATE'S EVIDENCE WAS INSUFFICIENT TO SUPPORT A CONVICTION FOR OBSTRUCTING JUSTICE.
In the instant case the appellant was found guilty of two counts of obstruction of justice arising out of the same act. The transcript indicates that the appellant only instructed that the red jacket be destroyed on one occasion. There was no other conduct which can be attributed to the appellant which might arguably have constituted obstruction of justice.
R.C. 2941.25, which deals with the issues of multiple counts and allied offenses of similar import, provides that:
 (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.
R.C. 2941.25 provides that where the conduct of an accused can be construed to constitute two or more allied offenses of similar import, an indictment may contain multiple counts for all such offenses and the accused can be tried and found to be guilty of all the counts, but may only be convicted of one. State v. West (Apr. 13, 1995), Union App. No. 14-94-37, unreported. Although the trial court herein found the appellant guilty on both counts of obstruction of justice,[2] it only entered sentence on one count. Thus, although the record is not as clear as it could be on this issue, the trial court adequately complied with R.C. 2941.25.
In State v. Jenks (1991), 61 Ohio St.3d 259, the Ohio Supreme Court re-examined the standard of review to be applied by an appellate court when reviewing a claim of insufficient evidence.
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Jackson v. Virginia [1979], 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, followed.
State v. Jenks, supra, paragraph two of the syllabus.
A judgment will not be reversed upon insufficient or conflicting evidence if it is supported by competent credible evidence which goes to all the essential elements of the case. Cohen v. Lamko (1984), 10 Ohio St.3d 167. Where there is substantial evidence upon which the trier of fact has based its verdict, a reviewing court abuses its discretion in substituting its judgment for that of the jury as to the weight and sufficiency of the evidence. State v. Nicely (1988), 39 Ohio St.3d 147. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact to determine. State v. DeHass (1967), 10 Ohio St.2d 230.
Several witnesses testified that the appellant did, in fact, give directions that Frank Manley's red jacket be burned to prevent it from being recovered as evidence by the police. The evidence further showed that the jacket was subsequently burned as a direct result of the appellant's instruction. R.C. 2921.32, obstructing justice, provided in pertinent part:
 (A) No person, with purpose to hinder the discovery, apprehension, prosecution, conviction, or punishment of another for crime, or to assist another to benefit from the commission of a crime, shall do any of the following:
* * *
 (4) Destroy or conceal physical evidence of the crime, or induce any person to withhold testimony or information or to elude legal process summoning him to testify or supply evidence(.)
R.C. 2923.03, complicity, states in pertinent part:
 (A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
 (1) Solicit or procure another to commit the offense; * * *
 (F) Whoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were a principal offender.
The state introduced competent, credible evidence as to all of the essential elements of obstruction of justice. The fact that the appellant denies making the statement attributed to her is not relevant to our discussion of the sufficiency of the evidence assignment of error. The evidence, if believed by the finder of fact, was clearly sufficient to establish that the appellant solicited third parties to destroy evidence for the purposes of hindering the police investigation into the underlying murder and aggravated robbery.
The trial court specifically stated that the testimony of the witnesses who testified against the appellant was more credible than the appellant's own testimony:
 I can find, as I said, no reason that the Finleys would have lied about this matter, especially when the person who is involved is their aunt and the mother of their cousin and good friend.
This court declines to substitute its judgment for that of the finder of fact. Accordingly, this assignment of error is overruled.
The appellant's fourth and final assignment of error states:
 IV. THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Article IV, Section 3(B)(3) of the Ohio Constitution authorizes appellate courts to assess the weight of the evidence independently of the fact-finder. Thus, when a claim is assigned concerning the manifest weight of the evidence, an appellate court has the authority and the duty to weigh the evidence and determine whether the findings of * * * the trier of fact were so against the weight of the evidence as to require a reversal and a remanding of the case for retrial. State ex rel. Squire v. City of Cleveland (1948), 150 Ohio St. 303, 345.
The standard employed when reviewing a claim based upon the weight of the evidence is not the same standard to be used when considering a claim based upon the sufficiency of the evidence. The United States Supreme Court recognized these distinctions in Tibbs v. Florida (1982), 457 U.S. 31, where the Court held that unlike a reversal based upon the insufficiency of the evidence, an appellate court's disagreement with the jurors' weighing of the evidence does not require special deference accorded verdicts of acquittal; i.e., invocation of the double jeopardy clause as a bar to relitigation. Id. at 43.
Upon application of the standards enunciated in Tibbs, the court in State v. Martin (1983), 20 Ohio App.3d 172, has set forth the proper test to be utilized when addressing the issue of manifest weight of the evidence. The Martin court stated:
 There being sufficient evidence to support the conviction as a matter of law, we next consider the claim that the judgment was against the manifest weight of the evidence.
 Here, the test is much broader. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
Moreover, it is important to note that the weight of the evidence and the credibility of the witnesses are issues primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230. Hence, we must accord due deference to those determinations made by the trier of fact.
Eric Bates, Charles Finley and Alphonso Finley, all juveniles on the day in question, each testified that the appellant ordered them to burn a coat that belonged to Frank Manley so that it could not be used as evidence against Manley. The two Finleys each identified a pile of ashes in the yard of the house as the remains of the burnt jacket.
The only testimony offered by the defense at trial, other than the appellant's own testimony, was provided by James Norton. Norton was the long time live-in boyfriend of the appellant's daughter. Norton testified that he was inside the Finley home during most of the relevant time period and that he did not hear the appellant direct anybody to burn the jacket. Yet, Norton admitted that he was outside looking for a parking spot during some of the time period that the appellant was in the house and that he did not leave with the appellant. During the relevant time period numerous other people were in the house and many different conversations were being carried on simultaneously. Norton admitted that there was no way that he could testify as to whether the statement purportedly made by the appellant was actually made, but, rather, only that he did not hear the statement himself.
The greater weight of the evidence introduced at trial tended to indicate that the appellant was guilty as charged of obstructing justice. Therefore, this assignment of error is overruled.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
DYKE, A.J., and PORTER, J., CONCUR.
 _____________________________ MICHAEL J. CORRIGAN, JUDGE
[1] The trial court has the inherent authority to control the proceedings. To avoid confusion, it is common for the court to direct the parties to make Crim.R. 16 requests at the close of direct examination.
[2] Purportedly one count related to obstruction relative to the robbery and the second to the homicide.