JOURNAL ENTRY AND OPINION
Defendant Shannon Drake appeals from his convictions for aggravated robbery and felonious assault. For the reasons set forth below, we affirm.
On November 27, 1998, defendant was indicted for aggravated robbery and felonious assault, both with one year and three year firearm specifications. Defendant pleaded not guilty and asserted an alibi. The matter proceeded to a jury trial on April 21, 1999.
The state's evidence demonstrated that at approximately 12:30 p.m., on September 18, 1998, Andre Higgins heard defendant calling his name outside of his apartment at East 131st Street and Brackland Avenue. Higgins looked outside and saw defendant standing at the back door. Because Higgins knew defendant from the neighborhood, he went to the back door. When Higgins got outside, no one was there. Higgins then propped open the door and walked around the side of the building. He saw defendant across the street and asked what defendant wanted. Defendant did not answer so Higgins returned to the apartment. As Higgins opened the back door, he was attacked by a man with a gun.
According to Higgins, the man put the gun to his stomach and they began to fight. A second attacker struck Higgins in the back of the head with a gun and other men arrived a short time later. The attackers struck Higgins, stole his wallet and took the earrings from his ears. Higgins stated that he had approximately $300 in his wallet.
Higgins fell to the floor. He observed defendant enter the building and go up to his apartment. The attackers then returned for Higgins, brought him to his apartment, and asked, where the shit at? The men ransacked the apartment and continued to strike Higgins. Higgins observed defendant in one of the bedrooms and watched as defendant and the other men whom he did not know exited the apartment.
After the men left, Higgins went outside after them and saw his neighbors, Mrs. Wright and Mr. Evans. The neighbors attended to Higgins's injuries and called the police. Higgins's head was scarred as the result of the attack and $800 was stolen from one of the bedrooms.
On cross-examination, Higgins admitted that he told the police that he had not run into defendant before, but he explained that this meant that they had not had any problems. He also admitted that he did not have the police check the apartment and that he did not go to the hospital for treatment.
Ronald Evans testified that he is lives on Brackland Avenue near East 131st Street. On September 18, 1998, at approximately 12:30 p.m., he observed defendant, whom he knew, and another man. Evans next saw Higgins going into the back door of his apartment and another man ran toward Higgins and grabbed the door. Two men then entered the apartment behind Higgins. After four or five minutes, Evans saw three or four men, including defendant, run out of the apartment, past him and through a field.
Evans further testified that Higgins came out of the apartment and said that he had been robbed. His head was bleeding. Evans called the police.
On cross-examination, Evans admitted that he did not hear defendant call out to Higgins and did not actually see defendant enter Higgins's apartment.
Louise Wright, sister of Ronald Evans, testified that she lives on Brackland Avenue in the same building as Evans. At approximately n12:30 p.m., on September 18, 1998, she observed four men, including defendant, running out of the nearby apartment building. Higgins then ran out of the building and stated that he had been robbed. The back of his head was bleeding.
Cleveland Police Det. James Butler testified that he learned from Higgins that one of the assailants was named Shannon Williams or Shannon Drake and lived in Longwood Estates. Det. Butler subsequently determined that defendant lived in the area described by Higgins. Det. Butler showed Higgins six photographs and Higgins identified defendant as one of the assailants.
Defendant elected to present evidence. Curtis Strickland, a laboratory technician with Timkin, testified that on September 17, 1998, defendant arrived at Strickland's house in Canton. The next day, defendant, his brother, and another friend named Corey borrowed Strickland's car. Strickland got a ride to work from a friend and defendant and the others picked Strickland up from work at 3:30 p.m. Strickland drove defendant back to Cleveland several days later.
Strickland admitted, however, that he has no knowledge of defendant's whereabouts prior to 3:30 p.m., on September 18, 1998.
Stanley Banks testified that he was at Canton Center Mall with defendant, defendant's brother and Corey at around noon on September 18, 1998. They locked their keys in the car around 2:30 p.m., then picked up Strickland from work at around 3:30 p.m.
Defendant testified that in the afternoon of September 17, 1998, he took a bus to Canton. He spent the night and stayed in Canton the following day with his brother and other friends. During the afternoon, the group went to Canton Center Mall in Strickland's car and defendant bought two pairs of tennis shoes. The group locked the keys in the car but picked up Strickland after 2:00 p.m. Defendant returned to Cleveland on September 21, 1998. Defendant denied spending time in Higgins's neighborhood, and denied living at Longwood within the last ten years. He also denied ever seeing Higgins prior to being indicted, denied committing the offenses and denied ever being involved in any violent activity. (Tr. 180).
Defendant did not appear on the second day of trial. The trial court issued a capias for him and the matter proceeded in defendant's absence.
Mark Fahringer testified that Higgins is not the lessee of the apartment where he stated that he resides.
Victoria Shilling testified that she saw defendant and his brother on the night before the attack and the night after. Pearl Bertram testified that on September 18, 1998, she saw defendant and his companions sometime between 12:30 and 1:00 p.m. at the Canton Mall.
Defendant's aunt, Arlene Parker, testified that there is a longstanding conflict between defendant's family and Evans' family.
For rebuttal, the state was permitted to present evidence that defendant had previously been convicted of offenses in 1991, 1993, and 1995.
The jury was charged and reached a verdict which the court sealed pending defendant's appearance. The state subsequently informed the court that it had information that defendant was in Jamaica and it moved to unseal the verdicts. The trial court granted the motion and read the verdicts in open court. Defendant was convicted of both charges but acquitted of the specifications. Thereafter, defendant appeared for sentencing and was sentenced to ten years incarceration for the aggravated robbery charge and five years incarceration for felonious assault. The terms were ordered to be served consecutively.
Defendant now appeals and assigns six errors, including two pro se errors for our review.
Defendant's first assignment of error states:
 THE TRIAL COURT COMMITTED PLAIN ERROR IN FAILING TO NOTIFY, SECURE THE PRESENCE OF, OR CONSULT DEFENSE COUNSEL AS TO JURORS'S QUESTIONS DURING DELIBERATIONS.
Within this assignment of error, defendant asserts that the trial court erred in responding to the jury's questions during deliberations, in the absence of both defendant and his counsel.
In State v. White (1989), 65 Ohio App.3d 564, 570, this Court stated as follows:
 It is well settled that "any communication between judge and jury that takes place outside the presence of the defendant or parties to a case is error which may warrant the ordering of a new trial." Bostic v. Connor (1988), 37 Ohio St.3d 144, 149, 524 N.E.2d 881, 886, citing State v. Abrams (1974), 39 Ohio St.2d 53, 39 O.O.2d 30, 313 N.E.2d 823. The presence of counsel during such communications ensures the opportunity to object or be heard on pertinent matters. Bostic, supra, at 149, 524 N.E.2d at 886.
The court noted, however, that there are limited circumstances where communications between the judge and jury following deliberations will be viewed as harmless, including instances where the communication does not involve applicable law and factual questions.
In this instance, the jury asked whether the state was required to prove that defendant personally committed the offenses and personally had the gun. The jury also expressed confusion regarding the definition of knowingly. The trial court reminded the jury of the aiding and abetting instruction, indicated that defendant had to personally have the weapon, and did not further define the term knowingly. Thus, the matters discussed in the absence of defendant and his trial counsel did not involve applicable law or factual questions, except with regard to the firearm specification. In regard to that specification, however, the court's response benefitted the defense. We therefore conclude that no prejudicial error occurred in connection with the trial court's response to the jury questions.
Moreover, we note that in State v. Drake (Oct. 28, 1993), Cuyahoga App. Nos. 63964, 63965, unreported, this Court evaluated events which are nearly identical to those challenged herein. The Drake Court stated:
 Included in the record on appeal is an envelope entitled "Jury Questions." The envelope contains two pieces of paper.
On one piece of paper is the question:
 Referring to "firearm specification," does it matter who brought the gun to the crime scene? (Victim, defendant, third party, etc. . . . ?
 The trial court's handwritten answer to this question is the following:
 Refer to the court's instructions and the evidence as you find it to be.
On the other piece of paper appear two questions:
 What does "on or about his person" mean in reference to the firearm specification?
Where are State's exhibits 1-A, 1-B, 1-C?
The trial court replied as follows:
 1.) Use your ordinary (sic) everyday definition of the words; and 2.) You have received all the exhibits 
(sic) evidence offered (sic) admitted.
This Court evaluated the trial court's reply by stating as follows:
 When the communications between the trial judge and the jury not only involve instructions on the applicable law, but also involve factual questions, the error cannot be deemed harmless. State v. White, supra. Such is not the situation in this case. Rather, the trial court merely repeated what it had previously stated to the jury on the record with counsel present. Since the trial court neither gave additional instructions nor explained those already given, any error was harmless beyond a reasonable doubt.
Accordingly, and by application of this Court's holding in State v. Drake (Oct. 28, 1993), Cuyahoga App. Nos. 63964, 63965, unreported, supra, we conclude that justice was fully accomplished and the error was harmless beyond a reasonable doubt. See Chapman v. California (1967),386 U.S. 18. The communication did not provide information relevant and material to the determination of guilt or innocence.
The first assignment of error is without merit.
Defendant's second assignment of error states:
 THE CUMULATIVE ERRORS OF TRIAL COUNSEL DEPRIVED APPELLANT OF EFFECTIVE ASSISTANCE OF COUNSEL, GUARANTEED BY THE UNITED STATES AND OHIO CONSTITUTIONS.
Defendant next complains that his trial counsel was ineffective for failing to adequately discuss defendant's alibi during opening statements, failing to object to the state's leading questions, and failing to cross-examine the witnesses regarding whether they were mistaken as to the identity of the perpetrator.
In order to establish a claim of ineffective assistance of trial counsel, the defendant must make a two-part showing:
 First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction *** resulted from a breakdown in the adversary process that renders the result unreliable.
Strickland v. Washington (1986), 466 U.S. 668, 687; accord State v. Bradley(1989), 42 Ohio St.3d 136, paragraphs two and three of the syllabus.
Further, there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance ***." Bradley, supra, at 142 quoting Strickland, supra, at 689.
In this instance, although defendant's trial counsel did not discuss defendant's alibi during opening statements, the length or extent of counsel's opening statement is not indicative of competency. State v. Aziz (March 10, 1994), Cuyahoga App. No. 64581, unreported. Further, the record demonstrates that the focus of the defense was that the witnesses had falsely identified defendant and that they had perhaps done so with an improper motive. The reasons behind this alleged improper motive were established during defendant's testimony and the testimony of his aunt. Defendant's trial counsel cross-examined the witnesses regarding whether they knew defendant, and whether they had an opportunity to make an accurate identification. Finally, we find only several isolated instances where defendant's trial counsel failed to object to leading questions. In short, we conclude that defendant was not denied effective assistance of counsel in this instance.
This assignment of error is without merit.
Defendant's third assignment of error states:
 APPELLANT'S CONVICTIONS FOR AGGRAVATED ROBBERY AND FELONIOUS ASSAULT ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Defendant asserts that the jury lost its way and created a manifest miscarriage of justice in convicting him herein. He also complains that the state erroneously informed the jury that he had been previously charged with robbery.
In State v. Thompkins (1997), 78 Ohio St.3d 380, 387, the Supreme Court set forth the role of an appellate court in determining whether a judgment is against the manifest weight of the evidence:
 When a court of appeals reverses the judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony.
 Tibbs [v. Florida (1982), 457 U.S. 31,] at 42, 102 S.Ct at 2218, 72 L.Ed.2d at 661. See, also, State v. Martin (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720-721 (The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should only be granted in the exceptional case in which the evidence weighs heavily against the conviction.)
In this matter, the state presented three eyewitnesses who had all known defendant previously. Higgins established that defendant called him out of his apartment and entered to ransack the apartment while defendant was being beaten. Evans and Wright also established that defendant at the scene at the time of the attack. Defendant's witnesses either could not present evidence concerning the crucial time period of the attack or provided testimony which was illogical and incredible. We cannot conclude that the jury lost its way in convicting defendant of the instant offenses.
As to the introduction of evidence concerning defendant's previous charge, defendant testified that he had never been involved in violent activity (Tr. 180) and the state then presented rebuttal evidence that in 1995, defendant was indicted for theft and robbery but ultimately plead guilty to the theft count. (Tr. 227). From the foregoing, defendant clearly opened the door for the state to introduce the rebutting evidence of defendant's violent propensities. Cf. State v. Williams (1988),38 Ohio St.3d 346, 351. See, generally, State v. Finnerty (1989),45 Ohio St.3d 104, 108; Evid.R. 404(A)(1).
The third assignment of error is without merit.
Defendant's fourth assignment of error states:
 THE TRIAL COURT COMMITTED PLAIN ERROR BY INSTRUCTING THE JURY ON AN ALIBI DEFENSE.
Here, defendant maintains that the trial court committed plain error by instructing the jury that alibi was a defense and that this erroneous instruction impermissibly imposed a burden of proof upon him.
Evidence of alibi is not an affirmative defense; it is a denial or contradiction of the evidence which has been offered by the prosecution. State v. Poole (1973), 33 Ohio St.2d 18, 19-21. In reviewing jury instructions, however, we follow the United States Supreme Court mandate that an instruction to a jury must be viewed in the context of the overall charge. State v. Price (1979), 60 Ohio St.2d 136, paragraph two of the syllabus.
Herein, the trial court stated as follows:
 The Defendant has presented an alibi defense, meaning he is asserting that he was at some other place at the time the offense occurred. The word alibi means elsewhere, or a different place. If the evidence fails to establish that the defendant was elsewhere, such failure does not create an inference the Defendant was present at the time when and at the place where an offense may have been committed. If, after consideration of the alibi evidence, along with all the evidence, you are not convinced beyond a reasonable doubt that the Defendant was present at the claimed crime scene at the time in question, you must return a verdict of not guilty.
Thus, the trial court repeatedly instructed the jury that the prosecution carried the burden of proof for all essential elements of the offense beyond a reasonable doubt. The trial court instructed the jury that if alibi evidence fails to establish a defendant is elsewhere, "such failure does not create an inference that the defendant was present at the time the offenses occurred." Finally, other courts have determined that no prejudicial error occurred where, in an isolated statement, the trial court referred to alibi as a defense during the charge to the jury. See State v. Mitchell (May 2, 1989), Franklin App. No. 88AP-695, unreported; State v. Bosley (March 27, 1986), Franklin App. No. 85AP-591, unreported; Sabo v. Ohio (1928), 119 Ohio St. 231.
This assignment of error is without merit.
Defendant's first pro se assignment of error states:
 THE STATE OF OHIO FAILED TO TURN OVER ALL EVIDENCE KNOWN PURSUANT TO CRIMINAL RULE 16 [IN VIOLATION OF THE REQUIREMENTS OF BRADY V. MARYLAND (1963), 373 U.S. 83.] Within this assignment of error, defendant complains that he
was not given a police report prepared by Det. Butler which contained exculpatory evidence. He further complains that the requirements of Crim.R. 16 were violated because information contained in police reports was inconsistent with Higgins's testimony.
With regard to the first of these claims, we note that pursuant to Brady v. Maryland (1963), 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-1197,10 L.Ed.2d 215, 218, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."
"`Exculpatory evidence' is defined as evidence favorable to the accused which, `if disclosed and used effectively, *** may make the difference between conviction and acquittal.'" State v. Rowe (1993),92 Ohio App.3d 652, 666, quoting U.S. v. Bagley (1985), 473 U.S. 667,676, 87 L.Ed.2d 481, 490, 105 S.Ct. 3375. The duty to disclose under Brady includes impeachment as well as exculpatory evidence. United States v. Bagley (1985), 473 U.S. 667, 676, 87 L.Ed.2d 481, 105 S.Ct. 3375.
In United States v. Agurs (1976), 427 U.S. 97, 107,49 L.Ed.2d 342, 96 S.Ct. 2392, the Court further explained:
 "The rule of Brady * * * arguably applies in three quite different situations. Each involves the discovery, after trial, of information which had been known to the prosecution but unknown to the defense." (Emphasis added.)
Applying this rule, the Supreme Court in State v. Wickline (1990),50 Ohio St.3d 114, stated as follows:
 As the alleged exculpatory records were presented during the trial, there exists no Brady violation requiring a new trial.
Herein, the record demonstrates that defendant's trial counsel had access to the police reports during trial. (Tr. 64). No Brady violation occurred.
As to defendant's additional pro se claim that Crim.R. 16 was violated in connection with Higgins's testimony, we note that Crim.R. 16(B)(1)(g) provides:
 Upon completion of a witness' direct examination at trial, the court on motion of the defendant shall conduct an in camera inspection of the witness' written or recorded statement with the defense attorney and prosecuting attorney present and participating, to determine the existence of inconsistencies, if any, between the testimony of such witness and the prior statement.
 If the court determines that inconsistencies exist, the statement shall be given to the defense attorney for use in cross-examination of the witness as to the inconsistencies.
 If the court determines that inconsistencies do not exist the statement shall not be given to the defense attorney and he shall not be permitted to cross-examine or comment thereon.
 Whenever the defense attorney is not given the entire statement, it shall be preserved in the records of the court to be made available to the appellate court in the event of an appeal.
The rule was designed to provide defense counsel with the opportunity to cross-examine a prosecution witness about any inconsistencies between direct testimony and a prior statement made by that witness. State v. Wilson (1985), 23 Ohio App.3d 111, 114. The trial court is vested with discretion to determine whether there are inconsistencies, however, and Crim.R. 16(B)(1)(g) makes no provision for the in camera inspection of the statement of one witness to impeach another witness. State v. Connor (March 9, 2000), Cuyahoga App. No. 75773, unreported.
In this instance, defendant's trial counsel claimed that Higgins's testimony was inconsistent with the police reports. The trial court correctly determined that defendant did not articulate a Crim.R. 16 violation since Crim.R. 16(B)(1)(g) makes no provision for the in camera inspection of the statement of one witness to impeach another witness.
The first pro se assignment of error is without merit.
Defendant's second pro se assignment of error states:
 THE EVIDENCE IN THE CASE AT BAR WAS INSUFFICIENT TO SUSTAIN A VERDICT OF GUILTY AS TO THE CHARGES OF AGGRAVATED ROBBERY, R.C. 2911.01, AND FELONIOUS ASSAULT, R.C. 2903.11, THEREBY DENYING APPELLANT DUE PROCESS ACCORDED BY THE SIXTH AND FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.
Here, defendant maintains that there is insufficient evidence linking him to the attack and robbery upon Higgins.
In State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, the Court described the role of the appellate court in reviewing a challenge to the sufficiency of the evidence supporting a conviction:
 An appellate court's function when reviewing the sufficiency of evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
Id., at paragraph two of the syllabus, citing Jackson v. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 520.
A challenge to the sufficiency of the evidence supporting a conviction will be rejected where the evidence establishes that the defendant, acting with the culpability required for the commission of an offense, aided and abetted in its commission. State v. Taylor (1993),66 Ohio St.3d 295, 324.
In this instance, a rational trier of fact could have concluded that defendant intentionally aided and abetted in the aggravated robbery and felonious assault of Higgins. The state demonstrated that defendant called Higgins out of the apartment then ran into the apartment, where the theft occurred, while Higgins was being beaten and seriously injured. The convictions are supported by sufficient evidence.
This assignment of error is without merit.
Affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
COLLEEN CONWAY COONEY, J., CONCURS ANNE L. KILBANE, J., CONCURS IN PART AND DISSENTS IN PART (SEE ATTACHED CONCURRING AND DISSENTING OPINION